*In re* PAROLE OF HILL

Docket No. 301364. Submitted January 5, 2012, at Grand Rapids.
    Decided November 8, 2012, at 9:00 a.m.

    The Berrien County Prosecutor applied in the Berrien Circuit Court
    for leave to appeal the Parole Board's grant of parole to Ronald
    Wynn Hill, a prisoner under the jurisdiction of the Department of
    Corrections. The Parole Board intervened. Hill requested appoint-
    ment of counsel for the prosecutor's appeal of the Parole Board's
    decision. The court, John E. DeWane, J., granted the request as
    well as the prosecutor's motion to stay the parole order pending
    the appeal. The court declined to address the constitutional issues
    of whether Hill was entitled to appointment of counsel, but
    reasoned that a circuit court has limited inherent authority to
    compel appropriations to carry out its constitutional responsibili-
    ties and that the appointment of counsel was reasonable and
    necessary for the administration of justice. After the prosecutor
    sought leave to appeal in the Court of Appeals, the circuit court
    reversed the Parole Board's decision to parole Hill. The Court of
    Appeals granted the prosecutor leave to appeal the order appoint-
    ing appellate counsel.

    The Court of Appeals *held*:

    1. Courts will not address moot questions that have no prac-
    tical legal effect unless the issue is one of public significance that
    is likely to recur, yet evade judicial review. The issues presented
    were not moot. Although the prosecutor's appeal of the Parole
    Board's decision is no longer pending in the circuit court, the issue
    of appointment of counsel for indigent criminal defendants during
    similar appeals by other, similarly situated, defendants is of public
    significance and likely to recur, yet evade review.

    2. An indigent criminal defendant has a due process right to
    appointed counsel at every stage of every criminal proceeding
    when the substantial rights of the accused criminal may be
    affected. The mere fact that a state has a parole process is
    insufficient to confer a protected liberty interest to a prisoner.
    Rather, the possibility of parole provides no more than a mere hope
    that the benefit will be obtained. A liberty interest is triggered
    only after the Parole Board's order has been effectuated by the

prisoner's release from prison. A state creates a protected liberty interest by placing substantive limitations on official discretion. Michigan's parole system does not create a constitutionally protected interest in parole. Rather, as part of the parole process, MCL 791.234(11) allows the prosecutor or the victim to appeal the Parole Board's decision to grant parole to the circuit court. During that review the circuit court ensures that the Parole Board did not abuse its discretion or violate the state constitution, a statute, administrative rule, or other regulation. Hill did not have a due process right to appointed counsel during the prosecutor's appeal of the Parole Board's decision to grant parole. Although the Parole Board had decided to grant parole, at the time of the prosecutor's appeal Hill remained incarcerated, did not benefit from the liberties of a probationer or parolee who have been released from prison before a revocation hearing, and therefore had not yet acquired a constitutionally protected expectation that the parole order would be effectuated. MCL 791.236(2), which allows the Parole Board to rescind a parole order for cause before a prisoner is released on parole, did not trigger a due process liberty interest because the order remained pending for circuit court review.

3. The Equal Protection Clause ensures that people similarly situated will be treated alike, but does not guarantee that people in different circumstances will be treated the same. Unless the discrimination impinges on the exercise of a fundamental right or involves a suspect class, the inquiry is whether the classification is rationally related to a legitimate governmental purpose. Fundamental rights include due process in criminal matters. MCR 7.118(D)(3)(b)(i) allows a prisoner to respond to a prosecutor's appeal of a parole-release decision through retained counsel or in propria persona. The court rule does not violate the Equal Protection Clause and Hill was not entitled to appointed counsel during the prosecutor's appeal of the Parole Board's decision to grant parole. As an incarcerated prisoner involved in the parole process Hill was not a member of a suspect class and did not have a due process liberty interest; accordingly, the rational basis test applied to MCR 7.118(D)(3)(b)(i). Although the rule may result in some inequality, it is rationally related to the legitimate governmental purpose of preserving scarce court resources.

4. Circuit courts have an inherent power to appoint counsel to represent indigent litigants to render justice in exceptional circumstances. In addition, circuit courts can direct and control the proceedings before them, make any order to effectuate their jurisdiction and have the authority to allocate previously apportioned funds in a manner it deems best to facilitate the fair and

orderly disposition of its proceedings. The circuit court did not abuse its discretion by using court funds, which had previously been apportioned for appointing appellate counsel for indigent defendants, to appoint appellate counsel for Hill. The case involved a complex parole proceeding and Hill has a learning disability. Because the circuit court has broad authority to facilitate the fair and orderly disposition of cases and controversies, it had discretion to appoint counsel for Hill, an indigent inmate, during the prosecutor's appeal of the Parole Board's decision.

Affirmed.

1. PAROLE — PAROLE BOARD — APPEALS OF PAROLE ORDERS — APPOINTMENT OF COUNSEL — DUE PROCESS.

An indigent criminal defendant has a due process right to appointed counsel at every stage of every criminal proceeding when the substantial rights of the accused criminal may be affected; the mere fact that a state has a parole process is insufficient to confer a protected liberty interest to a prisoner and the possibility of parole provides no more than a mere hope that the benefit will be obtained; when a Parole Board grants parole the incarcerated defendant does not have a due process right to appointed counsel during a prosecutor's or victim's appeal, brought under MCL 791.234(11), of the Parole Board's decision; a liberty interest is triggered only after the Parole Board's order has been effectuated by the prisoner's release from prison.

2. PAROLE — APPEALS OF PAROLE ORDERS — APPOINTMENT OF COUNSEL — EQUAL PROTECTION.

Under MCR 7.118(D)(3)(b)(i), a prisoner may respond to a prosecutor's appeal of a parole-release decision through retained counsel or in propria persona; the court rule does not violate the Equal Protection Clause because an incarcerated prisoner involved in the parole process is not a member of a suspect class and does not have a due process liberty interest; although MCR 7.119(D)(3)(b)(i) may result in some inequality, it is rationally related to the legitimate governmental purpose of preserving scarce court resources.

3. COURTS — DISCRETION OF COURTS — APPOINTMENT OF COUNSEL — APPEAL OF PAROLE BOARD DECISIONS.

Circuit courts have an inherent power to appoint counsel to represent indigent litigants to render justice in exceptional circumstances; circuit courts can direct and control the proceedings before them, make any order to effectuate their jurisdiction and have the authority to allocate previously apportioned funds in a manner it deems best to facilitate the fair and orderly disposition

of its proceedings; a circuit court has discretion to use funds that had previously been apportioned for appointing appellate counsel for indigent defendants to appoint appellate counsel for a defendant during a prosecutor's appeal of a Parole Board order granting parole.

*Arthur J. Cotter*, Prosecuting Attorney, and *Aaron J. Mead*, Assistant Prosecuting Attorney, for the Berrien County Prosecuting Attorney.

State Appellate Defender (by *Susan M. Meinberg* and *Marla R. McCowan*) for Ronald W. Hill.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, and *H. Steven Langschwager*, Assistant Attorney General, for the Parole Board.

Before: HOEKSTRA, P.J., and MARKEY and BORRELLO, JJ.

BORRELLO, J. Appellant, Berrien County Prosecutor, appeals by leave granted the trial court's order granting appellee Ronald Wynn Hill's request for appointed counsel during the prosecutor's appeal of the decision by the intervenor Parole Board (Board) to grant Hill parole. For the reasons set forth in this opinion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 1998, defendant pleaded guilty to second-degree murder for a death that resulted from a Molotov cocktail that was thrown through the window of his ex-girlfriend's home. Defendant was sentenced to 10 to 50 years' imprisonment. After several denials, the Board granted Hill parole on July 22, 2010. On August 30, 2010, the prosecutor applied for leave to appeal the Board's decision in the circuit court pursuant to MCL 791.234(11), and moved to stay the parole order. The circuit court granted the prosecutor's application and motion to stay.

Hill petitioned the trial court for a court-appointed attorney to represent him during the pendency of the prosecutor's appeal. The prosecutor objected, arguing that because Hill did not have a constitutional or statutory right to parole, he did not have a right to appointed counsel, and the circuit court did not have the authority to compel public funding to appoint counsel. The prosecutor maintained that the power to appropriate public funding for appointed counsel belonged to the Legislature, and argued that the judiciary's inherent power to compel appropriations to carry out its constitutional responsibilities was strictly limited. The prosecutor cited *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 143; 719 NW2d 553 (2006), wherein our Supreme Court articulated that a circuit court has limited inherent authority to compel appropriations to carry out its constitutional responsibilities.

On November 10, 2010, the circuit court held a hearing to address the issue and concluded that it had the "inherent right under the . . . separation of powers to do what is reasonable and necessary to see that justice is done and to carry out the constitutional and statutory mandates and duties of the court in a fair manner." The circuit court held that *Crawford Co* did not apply in this case because by appointing counsel, the circuit court did not need to order "any additional appropriation by the funding unit for any court purposes." Instead, the court intended to use funding that had already been appropriated for appointing appellate counsel for indigent defendants, "in a manner that we determine to be reasonable and necessary." The court concluded that the appointment of counsel was critical for the administration of justice. The court found that Hill was not capable of articulating the nuances involved with the appeal and stated that it would appoint counsel to represent Hill for the pendency of the pros-

ecutor's appeal. The circuit court declined to address the constitutional issue of whether Hill was entitled to appointed counsel and instead concluded that such appointment was "reasonable and necessary for the fair administration of justice." The circuit court then entered an order appointing counsel for Hill.

On December 1, 2010, the prosecutor applied in this Court for leave to appeal the circuit court's order appointing counsel. Before this Court granted the prosecutor's application, on February 17, 2011, the trial court reversed the Board's order granting Hill parole.[1] On February 18, 2011, this Court granted the prosecutor's application for leave to appeal.[2] On appeal, the prosecutor argues that the circuit court's authority to appropriate and spend public funds is limited to what is necessary to carry out the court's constitutional responsibilities and that appointing counsel for Hill was not necessary to carry out any constitutional responsibility because Hill did not have a statutory or constitutional right to counsel.

### II. MOOTNESS

As already noted, proceedings continued in the lower court after the prosecutor had moved for leave to appeal in this Court. The circuit court addressed the prosecutor's appeal and reversed the Board's decision to parole Hill. The Board moved for reconsideration of that decision and proceedings are no longer ongoing. "This Court's duty is to consider and decide actual cases and controversies." *Morales v Parole Bd*, 260 Mich App 29, 32; 676 NW2d 221 (2003). "To that end, this Court does

---

[1] Subsequently, the Attorney General, on behalf of the Parole Board, moved for reconsideration.

[2] *In re Parole of Hill*, unpublished order of the Court of Appeals, entered February 18, 2011 (Docket No. 301364).

not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002), abrogated on different grounds by *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006). The issues in this case are of public significance and likely to recur, yet evade judicial review. Although Hill's case is no longer pending, prosecutors in this state will continue to appeal parole board decisions to grant parole. Thus, the issue of whether a circuit court has authority to appoint counsel during similar appeals is of public significance and likely to recur, yet evade review. Furthermore, we cannot find any published federal or state cases on the pertinent issues presented in this appeal. We therefore deem resolution of these issues necessary insofar as their resolution may provide legal guidance to tribunals who will decide these issues in the future. Accordingly, we do not determine the issues presented moot and will address them in this opinion. See *Morales*, 260 Mich App at 32.

### III. STANDARDS OF REVIEW

The scope of a circuit court's powers involves a question of law that we review de novo. *Traxler v Ford Motor Co*, 227 Mich App 276, 280; 576 NW2d 398 (1998). Whether an incarcerated defendant has a constitutional right to appointed counsel during a prosecutor appeal of a parole board decision, necessarily involves an issue of constitutional law that we also review de novo. *People v Geno*, 261 Mich App 624, 627; 683 NW2d 687 (2004).

IV. ANALYSIS

A. THE PAROLE PROCESS IN MICHIGAN

A prisoner comes under the jurisdiction of the Parole Board after serving his or her minimum sentence, adjusted for good time or disciplinary credits. MCL 791.233(1)(a) through (d); MCL 791.234(1) through (5); *In re Parole of Haeger*, 294 Mich App 549, 552; 813 NW2d 313 (2011). The parole process is guided by statutorily mandated parole guidelines, *Haeger*, 294 Mich App at 553, but ultimately, "matters of parole lie solely within the broad discretion of the [Board] . . . ." *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003); see also MCL 791.234(11); MCL 791.235(1). If the Board decides to grant parole, either the prosecutor of the county from which the prisoner was committed or the victim of the crime may apply for leave to appeal the Board's decision in the circuit court. MCL 791.234(11); *In re Parole of Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). A prisoner "may respond to the application for leave to appeal through retained counsel or in propria persona, although no response is required," MCR 7.118(D)(3)(b)(i); however, a prisoner has no right to appeal the Board's decision to deny parole. See *Morales*, 260 Mich App at 34-40. Once the Board enters an order granting parole, it has discretion to rescind that order for cause before the prisoner is released and after the Board conducts an interview with the prisoner. MCL 791.236(2). After a prisoner is released on parole, the prisoner remains in the legal custody and control of the Department of Corrections and the Board retains discretion to revoke parole for cause and in accord with statutorily proscribed procedural guidelines. *Jones*, 468 Mich at 652-653; MCL 791.238; MCL 791.240a.

B. CONSTITUTIONAL RIGHT TO APPOINTED COUNSEL

1. DUE PROCESS LIBERTY INTEREST

Initially we note that Hill does not contend that there is a statute that confers a right to appointed counsel during a prosecutor appeal of a parole-release decision. Thus, we proceed by addressing Hill's contention that he possessed a constitutional right to appointed counsel. The prosecutor argues that the circuit court was not required to appoint counsel for Hill in order to carry out its constitutional responsibilities because Hill did not have a constitutional right to counsel. Conversely, Hill argues that the circuit court did not err by appointing counsel because he had a constitutionally protected right to appointed counsel during the pendency of the prosecutor's appeal. Hill's argument is based on his contention that a prisoner has a protected liberty interest once the Board makes its initial decision to grant parole.

The federal and state constitutions both guarantee that a person may not be deprived of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17; *Hanlon v Civil Serv Comm*, 253 Mich App 710, 722; 660 NW2d 74 (2002). "Procedural due process limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property." *Kampf v Kampf*, 237 Mich App 377, 382; 603 NW2d 295 (1999). "Whether the due process guarantee is applicable depends initially on the presence of a protected 'property' or 'liberty' interest." *Hanlon*, 253 Mich App at 723. "It is only when a protected interest has been found that we may proceed to determine what process is due." *Williams v Hofley Mfg Co*, 430 Mich 603, 610; 424 NW2d 278 (1988).

It is well-settled law that an indigent criminal defendant has the right to appointed counsel "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v Rhay*, 389 US 128, 134; 88 S Ct 254; 19 L Ed 2d 336 (1967). However, parole proceedings are not part of the criminal prosecution. *Morrissey v Brewer*, 408 US 471, 480; 92 S Ct 2593; 33 L Ed 2d 484 (1972). In the context of parole, the United States Supreme Court has held that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," because the person's "conviction, with all its procedural safeguards, has extinguished that liberty right." *Greenholtz v Inmates of Nebraska Penal & Correctional Complex*, 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979). In addition, the mere fact that a state has a parole process is insufficient to confer a protected liberty interest to a prisoner: "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained." *Id.* at 11.

In some instances, a liberty interest can arise in the context of parole. For example, a parolee facing parole revocation has a protected liberty interest such that he is entitled to some due process protection. *Morrissey*, 408 US at 480-485. Similarly, a probationer has a protected liberty interest that requires due process protection during revocation proceedings. *Gagnon v Scarpelli*, 411 US 778, 782; 93 S Ct 1756; 36 L Ed 2d 656 (1973). Furthermore, specific language in a state statute can create a liberty interest in parole release that requires some form of due process protection where the statute limits discretion of the parole authority. *Greenholtz*, 442 US at 11-12; see also *Bd of Pardons v Allen*, 482 US 369, 374-376; 107 S Ct 2415; 96 L Ed 2d 303 (1987). The United States Supreme Court has explained

that "a State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show that particularized standards or criteria guide the State's decisionmakers." *Olim v Wakinekona*, 461 US 238, 249; 103 S Ct 1741; 75 L Ed 2d 813 (1983) (quotation marks and citation omitted).[3] However, Michigan's parole system, in and of itself, does not create a constitutionally protected interest in parole. See *Glover v Parole Bd*, 460 Mich 511, 521; 596 NW2d 598 (1999) (holding that an inmate does not have a due process right to a written explanation of a Board denial of parole); *Hurst v Dep't of Corrections, Parole Bd*, 119 Mich App 25, 28-29; 325 NW2d 615 (1982) (holding that the relevant Michigan statutes did not create a constitutionally protected right to parole); *Morales*, 260 Mich App at 50-51 ("[N]either the constitution nor the parole statute creates a right to parole for inmates.") (quotation marks and citation omitted); *Haeger*, 294 Mich App at 549, 574-575 (holding that an inmate had no due process rights during prosecutorial appeal of parole order); *Sweeton v Brown*, 27 F 3d 1162, 1164-1165 (CA 6, 1994) (holding that Michigan's parole system, specifically, MCL 791.231, provided such broad discretion to the Board that the prisoner had no protected liberty interest).[4]

In this case, Hill does not contend that the parole process in Michigan in and of itself confers a protected liberty interest. Moreover, Hill cannot argue that he enjoyed the same liberties as a parolee or probationer because he remained incarcerated pending resolution of the prosecutor's appeal. Thus, *Morrissey*, 408 US at

---

[3] See also 59 Am Jur 2d, Pardon and Parole, § 103, pp 111-113 (describing how a state's parole statute can create an expectation of release that gives rise to a liberty interest in parole).

480, and *Gagnon*, 411 US at 778, are inapposite. However, at the same time, the Board entered an order to grant Hill parole. He had more than a mere hope that he would obtain such an order. See *Greenholtz*, 442 US at 11. Indeed, after the Board granted parole, but before his release, the Board could only rescind that order for cause. See MCL 791.236(2) ("A parole order may be rescinded at the discretion of the parole board for cause before the prisoner is released on parole."). Nevertheless, although the Board decided to grant parole, we conclude that Hill had not yet acquired a constitutionally protected expectation that the Board's order would be effectuated.

In reaching this conclusion we are guided by this Court's holding in *Haeger*, 294 Mich App at 549, and the United States Supreme Court's decision in *Jago v Van Curen*, 454 US 14; 102 S Ct 31; 70 L Ed 2d 13 (1981). In *Jago*, the Supreme Court addressed whether a prisoner who had his parole order revoked immediately before he was released from prison was entitled to due process and a hearing. *Id.* at 14-16. In that case a panel of the Ohio Adult Parole Authority (OAPA) recommended early parole for the respondent, a prison inmate, and the parole board approved the recommendation and notified the respondent. *Id.* at 14-15. The respondent was set to be released when the OAPA learned that he had been dishonest during the parole-decision process. *Id.* at 15. The parole board rescinded the order of parole without holding a hearing. *Id.* Following an unsuccessful appeal in the United States District Court for the Southern District of Ohio, the United States Court of Appeals for the Sixth Circuit agreed with the respondent and held that the order conferred a due process liberty interest on the basis of "mutually explicit understandings." *Id.* at 16 (quotation marks omitted). The Sixth Circuit reasoned, " 'Having been notified that he "ha[d] been paroled" . . . , [re-

spondent] had a legitimate expectation that his early
release would be effected.' " *Id.* at 17 (citation omit-
ted). The Supreme Court reversed the Sixth Circuit
and held that the appellate court erred by finding a
protected liberty interest on the basis of "mutually
explicit understandings." *Id.* The Court explained
that, while a "mutually explicit understanding" was
relevant to determine whether a person was deprived
of a property interest, the standard did not apply to
determining whether an inmate had a liberty interest
in parole. *Id.* at 18-19. The Court concluded that the
Ohio statutes gave full discretion regarding matters
of parole to the Board and that the respondent had
not obtained a protected liberty interest when he
received notice that he would be paroled. *Id.* at 20-21.

In *Haeger*, the Board granted Raymond Haeger pa-
role, but the circuit court reversed the Board's decision
following a prosecutor appeal. *Haeger*, 294 Mich App at
551. On appeal, Haeger argued in part, that he was
denied due process when, following the prosecutor's
appeal, the circuit court had deprived him of an ad-
equate opportunity to be heard. *Id.* at 574-575. In
rejecting Haeger's argument, this Court relied on
*Greenholtz* and explained:

> [A] potential parolee who remains in prison has no
> liberty to protect. As noted by the United States Supreme
> Court, "parole *release* and parole *revocation* are quite
> different. There is a crucial distinction between being
> deprived of a liberty one has, as in parole, and being denied
> a conditional liberty that one desires." A prisoner awaiting
> release on parole remains "confined and thus subject to all
> of the necessary restraints that inhere in a prison." The
> 'mere hope that the benefit' of parole 'will be obtained' is
> too general and uncertain, and therefore, "is not protected
> by due process." [*Id.* at 575, quoting *Greenholtz*, 442 US at
> 9, 11.]

Like in *Haeger* and *Jago*, although the Board entered an order granting Hill parole, the order had not been effectuated and Hill had not yet obtained a protected liberty interest. Rather, Hill remained incarcerated pending circuit court review of the Board's order; such review is a component of the discretionary parole process in Michigan—a process that does not give rise to a protected liberty interest in parole. See *Glover*, 460 Mich at 520; *Hurst*, 119 Mich App at 28; *Morales*, 260 Mich App at 50-51. Specifically, the Legislature has included a mechanism in the parole process that allows the prosecutor or the victim to appeal a Board decision to grant parole. MCL 791.234(11); *Elias*, 294 Mich App at 538. Indeed, circuit court review is contemplated as part of the parole process and the Board is required to, "issue in writing a sufficient explanation for its decision to allow meaningful appellate review." *Haeger*, 294 Mich App at 556 (quotation marks and citation omitted). During circuit court review, the court ensures that the Board did not abuse its discretion or violate the state constitution, a statute, administrative rule, or other regulation. *Elias*, 294 Mich App at 538. Thus, given that the parole process had not yet fully transpired, Hill did not have an expectation that the Board's order would be effectuated.

Hill argues that MCL 791.236(2) triggers a due process liberty interest. MCL 791.236(2) provides in relevant part that "[a] parole order may be rescinded at the discretion of the parole board for cause before the prisoner is released on parole." Relying on this "for cause" language, Hill contends that, he "could reasonably expect to enforce [the initial parole order] against prison officials." However, although the Board could not rescind the parole order absent good cause, Hill did not have an expectation that the order would be effectuated because the order remained pending for circuit court

review. Thus, we hold that MCL 791.236(2) did not create an expectation that the circuit court would affirm the Board's order.

Hill compares this case to parole-revocation proceedings, which require a certain level of due process protection. See *Morrissey*, 408 US at 480; *Gagnon*, 411 US at 787-791; see also MCL 791.240a (during a parole-revocation hearing in Michigan, a parolee is in part entitled to written notice, a hearing, and, for indigent parolees, appointment of counsel). However, parole revocation is distinct from a discretionary parole process that incorporates circuit court review—the process at issue in this case. The Supreme Court in *Greenholtz* articulated the difference between parole revocation and parole release as follows:

> [P]arole *release* and parole *revocation* are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires. The parolees in *Morrissey* (and probationers in *Gagnon*) were at liberty and as such could "be gainfully employed and [were] free to be with family and friends and to form the other enduring attachments of normal life" The inmates here, on the other hand, are confined and thus subject to all of the necessary restraints that inhere in a prison.
>
> A second important difference between discretionary parole *release* from confinement and *termination* of parole lies in the nature of the decision that must be made in each case. As we recognized in *Morrissey*, the parole-revocation determination actually requires two decisions: whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit. . . .
>
> The parole-release decision, however, is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with

> the difficult and sensitive task of evaluating the advisability of parole release. [*Greenholtz*, 442 US at 9-10, quoting *Morrissey*, 408 US at 482.]

In Michigan, circuit court review of a Parole Board order is distinct from the decisions involved in parole revocation. As already articulated, during circuit court review the court is charged with determining whether the Board abused its discretion and complied with the applicable statutes and administrative regulations. Unlike revocation, the circuit court does not determine whether an inmate engaged in conduct sufficient to warrant reversal of the Board's order or whether the inmate violated terms of the parole. Moreover, during the circuit court review, unlike a parolee or probationer, Hill remained incarcerated and did not benefit from any of the liberties of a probationer or parolee. He was not at liberty to be "gainfully employed" or "free to be with family and friends" or to "form the other enduring attachments of normal life." *Greenholtz*, 442 US at 9. Instead, although Hill had the Board's order in hand, he remained an inmate, "confined and thus subject to all of the necessary restraints that inhere in a prison." *Id*. Similar to the inmate in *Jago* who had a parole order rescinded before release, and the inmate in *Haeger* who had his parole order challenged and reversed by the circuit court before release, Hill's expectation that the Board's order would be effectuated was legally insufficient to trigger a protected liberty interest.

In sum, given that an appeal to the circuit court is part of the parole process, an inmate's constitutional liberty interest is not triggered when the Board enters its order granting parole. Instead, such interest is triggered after the parole process has run its course and the inmate is released from prison. As applied in this case, Hill did not have a constitutionally protected

liberty interest when the Board granted him parole such that he was entitled to appointed counsel during the pendency of the prosecutor's appeal.

### 2. EQUAL PROTECTION

Hill also contends that he is entitled to the appointment of counsel under the Equal Protection Clause because indigent inmate appellees "remain ill equipped to represent themselves in the prosecutor's appeal of the Parole Board's decision to grant parole." Hill's argument appears to be based on MCR 7.118(D)(3)(b)(i), which allows a prisoner to respond to a prosecutor's appeal of a parole-release decision "through retained counsel or in propria persona." Thus, Hill appears to contend that the Equal Protection Clause demands appointment of counsel for an indigent prisoner responding to a prosecutor's appeal because a prisoner who can afford counsel is allowed to respond through counsel. See *People v Portillo*, 241 Mich App 540, 542; 616 NW2d 707 (2000) (recognizing that court rules, like statutes, are subject to challenges on equal protection grounds).

"Equal protection is guaranteed under the federal and state constitutions." *Morales*, 260 Mich App at 49. While the Equal Protection Clause "ensure[s] that people similarly situated will be treated alike," it "does not guarantee that people in different circumstances will be treated the same." *Id.* "Unless the discrimination impinges on the exercise of a fundamental right or involves a suspect class, the inquiry under the Equal Protection Clause is whether the classification is rationally related to a legitimate governmental purpose." *Id.* at 49-50 (quotation marks and citation omitted). Fundamental rights include due process in criminal matters. *In re Parole of Franciosi*, 231 Mich App 607, 613 n 5; 586 NW2d 542 (1998).

Hill cites *Douglas v California*, 372 US 353; 83 S Ct
814; 9 L Ed 2d 811 (1963) in support of his equal
protection argument. In *Douglas*, the United States
Supreme Court held that criminal defendants were
entitled to appointed counsel during first appeals as of
right. *Id.* at 357. In *Halbert v Michigan*, 545 US 605,
611; 125 S Ct 2582; 162 L Ed 2d 552 (2005), the Court
explained:

> Two considerations were key to our decision in *Douglas*
> that a State is required to appoint counsel for an indigent
> defendant's first-tier appeal as of right. First, such an
> appeal entails an adjudication on the "merits." Second,
> first-tier review differs from subsequent appellate stages at
> which the claims have once been presented by [appellate
> counsel] and passed upon by an appellate court. [Quotation
> marks and citation omitted.]

None of the considerations at issue in *Douglas* are
present in this case. In this case, Hill was not contesting
his criminal conviction. Instead, he was a mere participant
in the parole process, and he did not have a protected
liberty interest in parole. Thus, *Douglas* is inapposite and
not controlling in this case. Having so determined, we
next address whether MCR 7.118(D)(3)(b)(i) compels the
appointment of counsel under the Equal Protection
Clause.

As explained, Hill did not have a due process liberty
interest in this case. Therefore, a fundamental right is not
at issue and strict scrutiny does not apply. *Morales*, 260
Mich App at 49-50. In addition, Hill, as a prison inmate,
was not a member of a suspect class. *Id.* at 51. Therefore,
the rational basis test applies. *Id.* Under the rational basis
test, the challenged legislation "is presumed constitu-
tional, and the party challenging it bears a heavy burden
of rebutting that presumption." *People v Idziak*, 484 Mich
549, 570; 773 NW2d 616 (2009) (quotation marks and

citation omitted). Specifically, "[t]o prevail under this highly deferential standard of review, a challenger must show that the legislation is arbitrary and wholly unrelated in a rational way to the objective of the statute." *Id.* at 570-571 (quotation marks and citation omitted). "Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with 'mathematical nicety,' or even whether it results in some inequity when put into practice." *Id.* (quotation marks and citation omitted). Rather, "[a] *rational basis exists for the legislation when any set of facts, either known or that can be reasonably conceived, justifies the discrimination.*" *Morales*, 260 Mich App at 51. Such a finding may be based on "rational speculation unsupported by evidence or empirical data." *FCC v Beach Communications, Inc*, 508 US 307, 315; 113 S Ct 2096; 124 L Ed 2d 211 (1993). "[I]n other words, the challenger must 'negative *every conceivable basis* which might support' the legislation." *TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 558; 629 NW2d 402 (2001), quoting *Lehnhausen v Lake Shore Auto Parts Co*, 410 US 356, 364; 93 S Ct 1001; 35 L Ed 2d 351 (1973) (emphasis added).

In this case, although MCR 7.118(D)(3)(b)(i) may result in some inequality when put into practice, Hill cannot "negate every conceivable basis" which might support the rationale underlying the court rule. *TIG Ins Co*, 464 Mich at 558. In particular, the rule preserves scarce court resources, which is a legitimate governmental purpose. See *Morales*, 260 Mich App at 52 (holding that precluding inmates from appealing Board denials of parole was rationally related to the legitimate governmental interest of preserving scarce public resources). Moreover, it is reasonably conceivable that the court rule does not require appointment of counsel for indigent inmates because, during many prosecutor appeals of parole release decisions, the Attorney General

appears on behalf of the Board and presents arguments that, in part, may advance the inmate's interests. As noted, a finding that legislation is rationally related to a legitimate governmental purpose may be based on "rational speculation unsupported by evidence or empirical data." *Beach Communications*, 508 US at 315.

Moreover, we note that a state need not level the economic playing field for indigent defendants in every instance:

> The [United States Supreme] Court has not guaranteed that all defendants will be able to present their defense or prosecute their appeals with equal resources, for it is incapable of leveling the economic ability of some defendants to pay for superior legal or investigative services that may be of some assistance to them. [4 Rotunda & Nowak, Constitutional Law (4th ed, 2012 Supp), § 18.41 p 897.]

In the context of indigent defendants and discretionary appeals, the Supreme Court has held that a state need not appoint counsel in every instance in which a wealthy defendant may be able to afford one: see e.g. *Halbert*, 545 US at 610, citing *Ross v Moffitt*, 417 US 600, 610-612, 615-618; 94 S Ct 2437; 41 L Ed 2d 341 (1974) ("[A] State need not appoint counsel to aid a poor person in discretionary appeals to the State's highest court, or in petitioning for review in [the United States Supreme] Court."); *Gagnon*, 411 US at 790 (holding that appointed counsel was not necessary at every probation-revocation proceeding, but rather should be determined on a case-by-case basis).

Thus, we conclude that the court rule does not violate the Equal Protection Clause because it is rationally related to a legitimate governmental purpose. *Morales*, 260 Mich App at 49-50.

In summary, the Board's order granting Hill parole did not trigger any protected due process liberty interest, and Hill was not entitled to appointed counsel under the Equal Protection Clause. Therefore, the circuit court was not compelled to appoint counsel for Hill during the pendency of the prosecutor's appeal to fulfill its constitutional responsibility. Having determined that the circuit court was not compelled to appoint counsel, we next address the issue of whether the circuit court had the inherent authority to appoint counsel.

### C. CIRCUIT COURT'S AUTHORITY TO APPOINT COUNSEL

Hill argues that even if he did not have a constitutional right to appointed counsel, the circuit court nevertheless had the inherent authority to appoint counsel. Conversely, the prosecutor argues that the circuit court erred when it held that it had inherent authority to appoint counsel at public expense.

### i. *CRAWFORD CO* IS NOT CONTROLLING

The prosecutor's central argument on this issue is that the power to appropriate public funds belongs to the Legislature, and that the circuit court's inherent authority to compel appropriations is strictly limited pursuant to *Crawford Co*, 476 Mich at 131.

In *Crawford Co*, the circuit court sought to compel counties to appropriate funding for enhanced pension and retiree health-care plans that it deemed necessary to recruit staff and allow it to carry out its judicial functions. *Id*. at 134. The circuit court maintained that the increased benefits were reasonable and necessary to allow it to perform its constitutional responsibilities. *Id*. The court reasoned that, absent the enhanced benefits

package, the resulting poor morale and reduced productivity of the employees would not allow the court to function properly. *Id*. at 138. This Court affirmed the circuit judge's order compelling the appropriations. *Id*. at 139. Our Supreme Court granted leave, and in an opinion by Justice MARKMAN,[5] reversed this Court. *Id*. at 135. Justice MARKMAN began by explaining that a core aspect of the Legislature's constitutional authority includes the power to tax and appropriate public funding. *Id*. at 141. However, Justice MARKMAN reasoned that in some instances, the judiciary has the power to compel funding to allow it to carry out its constitutional responsibilities:

> In order for the judicial branch to carry out its constitutional responsibilities . . . the judiciary cannot be totally beholden to legislative determinations regarding its budgets. While the people of this state have the right to appropriations and taxing decisions being made by their elected representatives in the legislative branch, they also have the right to a judiciary that is funded sufficiently to carry out its constitutional responsibilities.
>
> Thus, the judiciary's "inherent power" to compel appropriations sufficient to enable it to carry out its constitutional responsibilities is a function of the separation of powers provided for in the Michigan Constitution. [*Id*. at 143.]

Justice MARKMAN cautioned that the judiciary's inherent authority to compel appropriations is limited:

> However, in order to accommodate this distinctive, and extraordinary, judicial power with the normal primacy of the legislative branch in determining levels of appropriations, the "inherent power" has always been sharply circumscribed. The "inherent power" contemplates only the power, when an impasse has arisen between the legislative

---

[5] Justice MARKMAN was joined by Chief Justice TAYLOR and Justice YOUNG and a concurring opinion by Justice CORRIGAN, *Crawford Co*, 476 Mich at 161-162.

and judicial branches, to determine levels of appropriation that are "reasonable and necessary" to enable the judiciary to carry out its constitutional responsibilities. [*Id.*]

Justice MARKMAN concluded that the circuit court failed to demonstrate by clear and convincing evidence that the enhanced benefit plan was "both 'reasonable and necessary' to allow that court to function serviceably in carrying out is constitutional responsibilities." *Id.* at 149-155.

The prosecutor's argument that *Crawford Co* controls the outcome of the case at bar is misplaced. The circuit court in this case did not compel its funding units to provide any additional appropriations so that it could appoint counsel for Hill. Instead, the circuit court utilized funds that had already been apportioned for purposes of appointing appellate counsel for indigent defendants. Unlike the circuit court in *Crawford Co*, which had attempted to compel additional funding, the circuit court in this case did not compel any additional appropriations from its funding units. In stark contrast to *Crawford Co*, this case calls on us to decide whether a circuit court possesses the inherent authority to allocate previously apportioned funds in a manner it deems best facilitates the fair and orderly disposition of its proceedings.

ii. THE CIRCUIT COURT HAD AUTHORITY TO APPOINT COUNSEL

MCR 7.118(D)(3)(b)(i) does not address whether a circuit court has the authority to appoint counsel for an indigent inmate responding to an appeal of a Parole Board decision. Specifically, MCR 7.118(D)(3)(b)(i) provides that an inmate "may respond to the [prosecutor's or the victim's] application for leave to appeal through retained counsel or in propria persona, although no response is required." Although MCR 7.118(D)(3)(b)(i)

is silent on the issue, we hold that because a circuit court has broad authority to facilitate the fair and orderly disposition of cases and controversies, it has discretion to appoint counsel for indigent inmates responding to an appeal of a Parole Board decision.

The state constitution vests judicial power "exclusively in one court of justice," Const 1963, art 6, § 1, and the circuit courts are a division of the state's "one court of justice." *Detroit Mayor v Michigan*, 228 Mich App 386; 413; 579 NW2d 378 (1998), aff'd in part, vacated in part on other grounds 460 Mich 590 (1999). Circuit courts possess inherent authority to " 'declare what the law is and to determine the rights of parties conformably thereto.' " *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich 254, 258; 98 NW2d 586 (1959), quoting 16 CJS, Constitutional Law, § 144, p 687. "In addition to such traditional adjudicative powers, the Michigan Supreme Court has long recognized that the judiciary possesses 'all the authority necessary to exercise its powers as a coordinate branch of government.' " *Detroit Mayor*, 228 Mich App at 411, quoting *In re 1976 PA 267*, 400 Mich 660, 663; 255 NW2d 635 (1977). Such powers, "have been exclusively entrusted to the judiciary by the Constitution and may not be diminished, exercised by, nor interfered with by the other branches of government without constitutional authorization." *In re 1976 PA 267*, 400 Mich at 663. A circuit court's inherent power "is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006); see also *People v Brown*, 238 Mich 298, 300; 212 NW 968 (1927) (stating that a circuit court has the inherent right to "function efficiently"). In addition to their inherent powers, circuit courts also have express statu-

tory authority to "direct and control the proceedings before them." *Maldonado*, 476 Mich at 376, citing MCL 600.611. Specifically, MCL 600.611 provides that, "[c]ircuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments."

Included within a court's inherent powers is the power to appoint counsel to represent indigent litigants to render justice in the face of exceptional circumstances. See 7A CJS, Attorney & Client, § 139, p. 126. In particular, our Supreme Court has previously recognized that on some occasions it is necessary to appoint appellate counsel for an indigent inmate during an appeal of a parole-release decision. In *In re Parole of Paquette*, 489 Mich 982; 799 NW2d 555 (2011), this Court denied the Parole Board's application for leave to appeal a circuit court order reversing the Board's decision to grant the defendant parole.[6] The Board applied for leave to appeal in our Supreme Court, and, in lieu of granting leave, our Supreme Court remanded the case to this Court for consideration as on leave granted. *Id.* In addition, our Supreme Court ordered the State Appellate Defender Office to act as counsel for the defendant "in the Court of Appeals and any subsequent proceeding in this Court." *Id.*

In this case the circuit court did not act outside the scope of its inherent authority when it appointed appellate counsel for Hill. As noted, a circuit court has broad authority to manage its own affairs in order to achieve "the orderly and expeditious disposition of cases." *Maldonado*, 476 Mich at 376. Further, a circuit court can "direct and control the proceedings before them" and make any order to

---

[6] *In re Parole of Paquette*, unpublished order of the Court of Appeals, entered February 10, 2011 (Docket No. 301140).

effectuate their jurisdiction. *Id.*; MCL 600.611. "An exercise of the court's inherent power may be disturbed only upon a finding that there has been a clear abuse of discretion." *Persichini v William Beaumont Hosp*, 238 Mich App 626, 642; 607 NW2d 100 (1999). An abuse of discretion occurs when a court's decision falls outside the range of "reasonable and principled outcome[s]." *Maldonado*, 476 Mich at 389. The circuit court in this case did not abuse its discretion by exercising its authority to appoint appellate counsel for Hill. Like our Supreme Court in *Paquette*, in this case the circuit court found that appointing appellate counsel to represent Hill was important for the administration of justice. While no single factor is outcome determinative when deciding whether to appoint counsel in such cases, in this case the circuit court noted that Hill was involved in a complex parole proceeding. The complexity of the parole proceeding required review of an extensive Department of Corrections file dating back to 1998 that included multiple reports. The appeal also required the circuit court to determine whether the Board adhered to the constitution, statutes, and a myriad of administrative rules and regulations. See *Elias*, 294 Mich App at 510-523. Moreover, this case involved an inmate who had a learning disability. It was therefore a reasonable and proper exercise of the circuit court's discretion to conclude that appointing appellate counsel would facilitate the efficient and fair administration of justice. Furthermore, the circuit court used funds that had been previously apportioned for purposes of appointing appellate counsel for indigent defendants. Accordingly, the circuit court did not abuse its discretion by determining that appointment of counsel for Hill was an appropriate way to utilize its funds.

V. CONCLUSIONS

A prosecutor's appeal of a parole-release decision is part of the parole process in Michigan, and an inmate's constitutional liberty interest is not triggered when the Board enters its order to grant parole. Instead, a liberty interest is triggered only after the Board's order is effectuated and the inmate is released from prison. In this case, Hill did not have a constitutionally protected liberty interest when the Board granted him parole that would have compelled the circuit court to appoint counsel during the pendency of the prosecutor's appeal. In addition, the circuit court was not compelled to appoint counsel under the Equal Protection Clause. However, the circuit court had the inherent authority to use funds that had already been appropriated to appoint counsel for Hill to facilitate the orderly and efficient disposition of the proceeding. While it is within the inherent authority of the circuit court to appoint counsel to indigent persons in prosecutor's appeals from the decisions of the Parole Board, neither the federal nor state constitutions compel a circuit court in such cases to appoint counsel. Rather, the circuit court possesses broad discretion to determine when an indigent inmate, in a prosecutor's appeal of a Parole Board's decision, should have appointed counsel. Therefore, the decision of whether to appoint counsel in a prosecutor's appeal of a Parole Board's decision shall be reviewed by this Court for an abuse of discretion. Having determined that the circuit court did not abuse its discretion in this case, we affirm.

Affirmed.

HOEKSTRA, P.J., and MARKEY, J., concurred with BORRELLO, J.