# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON ANTHONY RYAN,

        Defendant-Appellant.

UNPUBLISHED
May 11, 2017

No. 330450
Kalkaska Circuit Court
LC No. 14-003643-FC

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree murder, MCL 750.316, and first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f). The trial court sentenced defendant to concurrent prison terms of life without parole for the murder conviction and 60 to 120 years for the CSC-I conviction. We affirm.

Defendant's convictions arise from the October 1996 sexual assault and murder of 68-year-old Geraldine Montgomery. The police discovered Montgomery's body inside the trunk of her car, which had been running inside her closed garage. The garage was filled with car exhaust and Montgomery died from carbon monoxide poisoning. The medical examiner discovered semen inside the victim's vagina and visible injuries on her body consistent with a sexual assault. The police investigation led to Jamie Peterson, who in 1998 was convicted of first-degree murder, CSC-I, and larceny in a building after he "confessed to beating and raping the victim, forcing her into the trunk of her car, shutting the trunk, and then starting the car and leaving it running with the garage door closed." *People v Peterson*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2001 (Docket No. 216575). This Court affirmed Peterson's convictions in 2001. *Id.* The prosecutor's office reopened the case in 2013 and, utilizing updated DNA technology, discovered that DNA from the semen found in the victim's vagina and DNA from a stain on the victim's shirt matched defendant's DNA. Peterson was excluded as a

donor of this DNA.[1]  Defendant was thereafter charged with Montgomery's murder and sexual assault.

Defendant's first trial ended in a mistrial after the jury was unable to reach a verdict. Before defendant's second trial, the defense filed a motion to introduce Peterson's confessions and inculpatory statements at defendant's retrial.  The trial court denied the motion.  Defendant filed an interlocutory application for leave to appeal that decision in Docket No. 326134.  This Court denied the application for "failure to persuade the Court of the need for immediate appellate review."  *People v Ryan*, unpublished order of the Court of Appeals, entered May 15, 2015 (Docket No. 326134).  Defendant was retried in October 2015, and a jury convicted him of first-degree murder and CSC-I.

## I.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he is entitled to a new trial due to ineffective assistance of counsel.  "A claim of ineffective assistance of counsel should be raised by a motion for a new trial or an evidentiary hearing."  *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000), citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).  Because defendant did not raise this issue in an appropriate motion in the trial court, our review of this issue is limited to errors apparent from the record.  *Snider*, 239 Mich App at 423.

Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law.  *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).  Counsel is presumed to have rendered effective assistance and exercised reasonable professional judgment in all significant decisions.  *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).  Defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy."  *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).  To establish ineffective assistance of counsel, defendant must show that: (1) counsel's representation "fell below an objective standard of reasonableness" and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different.  *Vaughn*, 491 Mich at 670, citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim."  *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant argues that defense counsel was ineffective for failing to call a DNA expert at trial.  Decisions regarding whether to call or question witnesses are generally presumed to be matters of trial strategy.  *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).  In the instant case, the record discloses that defense counsel intended and attempted to call a DNA expert, but the trial court prevented her from doing so because she failed to properly name the

---

[1] In August 2014, the circuit court granted Peterson's motion for relief from judgment and ordered a new trial.  The charges against Peterson were later dismissed.

expert on an updated witness list. Thus, the failure to call the witness cannot be attributed to trial strategy. Rather, counsel was unable to call the witness due to her own error, which qualifies as objectively unreasonable.

However, "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). When asked at trial what testimony defendant's expert intended to offer, defense counsel could not provide a specific answer. Defendant argues on appeal that "[t]he DNA expert would have educated the jury as to secondary transfer of DNA that could have occurred accidentally or intentionally." However, defendant had already given a statement to the police in which he admitted engaging in sex with an elderly woman when he was 18 years old, and he testified at trial that he pieced together that the victim was the woman he had sex with when he was 18 years old. Defendant's admission and testimony provided an explanation for the presence of his DNA on the vaginal swab taken from the victim. In light of this evidence, defendant's theory that an expert could have conceivably testified that he had sexual relations with a woman, who in turn had sex with another man who sexually assaulted the victim and carried forward the woman's pubic hairs and defendant's semen, was not reasonably likely to produce a different outcome. More significantly, the evidence did not support this hypothesis. Defendant makes much of the fact that a minor sample was found in the victim's vaginal swab. However, when asked whether the results of the sperm fraction of the DNA indicated that two males had ejaculated, the laboratory technician, Ann Hunt, testified that the limited results were "insufficient for a conclusive association" and that she could not rule out that the minor sample contained a mixture of defendant's and the victim's DNA. Hunt also described the wash procedure that was designed to break apart the female cells in the sample while leaving the sperm cells intact. Given this testimony, it is as likely that the jury would conclude that some of the victim's cells survived the wash procedure and became mixed into the sperm fraction as it is that it would find that two donors existed. In addition, Hunt testified that the non-sperm DNA sample from the vaginal swab contained only the victim's DNA. It would appear to be virtually impossible for an unknown woman to transfer defendant's DNA to another man without leaving some of her own as well. Moreover, other expert witnesses testified that sperm cells normally begin to degrade fairly rapidly, from 24 hours to five days at the latest. In light of this body of evidence, defendant has not established that the failure to call a defense DNA expert deprived him of a substantial defense.

Defendant next argues that counsel was ineffective for having him submit to a police interview after his arrest. During this interview, defendant gave a statement admitting that he participated in a consensual sexual encounter with the victim near the time of her death, but he claimed that she was healthy and alive afterward. Defendant recognizes that the decision to have him submit to a second police interview was a strategic one. This Court generally will not second-guess trial counsel's strategic decisions with the benefit of hindsight. *Dixon*, 263 Mich App at 398. Moreover, it was not objectively unreasonable for defense counsel, when faced with DNA evidence showing that defendant's semen had been found inside the victim's vagina at the time of her death, to advance a theory of defense that included an innocent explanation for the presence of that DNA. Defendant's statements during the second interview were consistent with a theory of innocence, and consistent with the testimony that defendant later provided at trial. Defense counsel reasonably may have believed that the credibility of defendant's anticipated trial

testimony would be enhanced if the jury knew that he had previously gone to the police and offered a similar account at that time. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Defendant argues that if he had not given the second interview, he could have raised his DNA transfer theory or a theory of "malicious incrimination" instead. However, the fact that an alternate theory may have existed does not itself lead to a conclusion that the strategy chosen was objectively unreasonable. Moreover, in order to give credence to defendant's alternate theory, we would have to conclude that defendant lied to the police and committed perjury at trial when he admitted engaging in consensual sexual relations with the victim. Defendant cannot show, and does not argue, that counsel deliberately told him to lie. In sum, defendant has not overcome the presumption that the decision to have him submit to a second police interview was reasonable strategy.

Defendant also argues that defense counsel was ineffective for failing to call the victim's neighbor to testify. At defendant's first trial, the neighbor testified that he saw a blue, boxy late model car in the victim's driveway three or four times within a couple of days before the victim's murder, and again on the day the victim was killed. The neighbor described seeing a blonde-haired young man who was thin and 20-something, wearing a plaid shirt and standing in the victim's living room, at approximately the time the police believed the attack occurred. Defendant argues that the witness would have supported his theory that someone else was responsible for the victim's murder. However, defendant testified at trial that he was 18 years old, approximately 5' 10" tall, and weighed 150 pounds in 1996. Apart from the description of the person's hair color, defendant arguably matched the physical description of the male seen on the day of the murder. While counsel could have attempted to use the difference in hair color to further a theory that another male was present in the victim's home, this would not have explained the presence of defendant's DNA on the vaginal swab. Calling the witness also could have backfired once the similarities between the described man and defendant were pointed out by the prosecutor. Again, defendant has not overcome the presumption that counsel's decision not to call the neighbor as a witness was objectively reasonable, and he has not shown that the neighbor could have provided a substantial defense.

Defendant also argues that defense counsel was ineffective for failing to elicit testimony from Ann Hunt that a condom containing male DNA that did not match defendant's DNA was found in the driveway of the victim's residence. However, defendant has not provided any information indicating when this condom was discovered. Therefore, defendant has not met his burden of showing that, had this testimony been elicited at trial, it is reasonably probable that the jury would have found the discovery of the condom to be significant and thereby affected its verdict.

Defendant next argues that counsel was ineffective for failing to move for dismissal due to prearrest delay. "For a defendant to be entitled to dismissal on this basis, the defendant must show that the delay caused actual and substantial prejudice to the defendant's right to a fair trial *and* an intent by the prosecution to gain a tactical advantage." *People v Reid (On Remand)*, 292 Mich App 508, 511-512; 810 NW2d 391 (2011) (citation and quotation marks omitted; emphasis added). In this case, there is no basis for concluding that the delay in arresting defendant for the

victim's murder was designed to provide the prosecution with a tactical advantage. The delay was instead attributable to the initial prosecution of another individual who had admitted his involvement in the victim's murder, and to the fact that the presence of defendant's DNA on the victim was not discovered until 2013, after advancements in DNA testing technology. Therefore, any motion to dismiss on this basis would not have been successful. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. EXCLUSION OF EVIDENCE

Defendant argues that the trial court erred by excluding material evidence, which thereby violated his constitutional right to present a defense. We disagree. We review preserved claims of evidentiary error for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). Unpreserved claims are reviewed for plain error affecting defendant's substantial rights. *People v Benton,* 294 Mich App 191, 202; 817 NW2d 599 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Constitutional issues are generally reviewed de novo. *In re Parole of Hill,* 298 Mich App 404, 410; 827 NW2d 407 (2012).

Although a defendant has a constitutional right to present a defense, US Const, Am VI; Const 1963, art 1 § 20; *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993), he must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict. See *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984); *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982). "The right to present a defense extends only to *relevant* evidence." *People v Danto*, 294 Mich App 596, 604; 822 NW2d 600 (2011). The Michigan Rules of Evidence prohibit the admission of evidence that is not relevant. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even if relevant, a trial court may properly exclude evidence if its probative value is substantially outweighed by, *inter alia*, the danger of unfair prejudice, confusion of the issues, or misleading the jury. MRE 403.

### A. JAMIE PETERSON'S PRIOR INCULPATORY STATEMENTS

Defendant first argues that the trial court erred by denying his request to introduce Jamie Peterson's prior inculpatory statements. Defendant moved to admit Peterson's statements under MRE 804(b)(3), the hearsay exception for statements against the declarant's interest. This rule provides that the following statements are not excluded by the general prohibition against hearsay, MRE 802, when the declarant is unavailable:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not

have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible *unless corroborating circumstances clearly indicate the trustworthiness of the statement.* [Emphasis added.]

The trial court found that Peterson was unavailable and that the proffered statements were against his penal interest, but that the statements were not admissible as exculpatory evidence at defendant's trial because there were no corroborating circumstances that clearly supported the trustworthiness of the statements.

When reviewing a trial court's decision whether to admit a statement offered under MRE 804(b)(3) to exculpate a defendant, the trial court's findings concerning whether corroborating circumstances indicate the trustworthiness of the statement are reviewed under the clearly erroneous standard. *People v Barrera*, 451 Mich 261, 268-269; 547 NW2d 280 (1996). Because the declarant's credibility affects the statement's trustworthiness, a court may exclude a statement when the declarant's veracity is "seriously doubtful or entirely lacking." *Id.* at 272-273. When evaluating the trustworthiness of a statement, a trial court should consider: (1) the statement's contents, (2) the surrounding circumstances when the declarant made the statement, and (3) all other relevant facts. *Id.* at 275-276. As explained in *Barrera*, "the more crucial the statement is to the defendant's theory of defense, the less corroboration a court may constitutionally require for its admission" and, in contrast, "the more remote or tangential a statement is to the defense theory, the more likely other factors can be interjected to weigh against admission of the statement." *Id.* at 279-280.

Defendant has not shown that the trial court clearly erred in finding that corroborating circumstances did not clearly indicate the trustworthiness of Peterson's statements. The trial court noted that Peterson had recanted his prior confessions and had explained his motive for lying. The court also found that the statements were made under questionable circumstances to a police officer or to a cell mate who was a stranger, whereas at least one of the statements recanting the earlier confessions was made to a family member. The court also considered that a different circuit court judge had found that the confessions were made under such questionable circumstances that Peterson was entitled to reversal of his convictions and a new trial. Defendant does not address these findings on appeal. Although defendant asserts that "in some cases" Peterson's statements were corroborated by evidence at trial, to be admissible under MRE 804(b)(3), it is necessary that corroborating circumstances "clearly" indicate the trustworthiness of the statements.

The trial court's decision is supported by the detailed discussion of Peterson's confessions by the circuit court judge who granted Peterson's motion for relief from judgment and vacated his convictions, which were predicated on the confessions. The judge noted that Peterson had argued, and would likely again argue, that "the confession was the product of information provided to him during police interrogation and that he suffers from mental illness and cognitive impairment," and it found that "any allegation that [Peterson] recently confessed to the crimes is dubious given the source of the allegation, the source's motivation for coming forward, and the inconsistencies contained in the source's statement to police." With respect to any theory that defendant and Peterson worked together, the judge noted that the DNA evidence

pointed to defendant as the sole perpetrator, and that there was scant evidence that defendant and Peterson associated with each other at the time of the crimes.

Under the circumstances, the trial court did not clearly err in finding that Peterson's confessions were untrustworthy, and therefore, inadmissible as exculpatory evidence under MRE 804(b)(3).

## B. EXCLUSION OF LELAND ADAMS'S TESTIMONY

Defendant also argues that the trial court erred by prohibiting him from calling Leland Adams as a witness at trial. We disagree.

Defendant sought to call Adams to show that Adams had expressed his love for the victim, had been to the victim's home, had a criminal record, was in the area on the night of the victim's death, and had made conflicting statements about his whereabouts on the day of the crime. Defense counsel also stated that she was offering Adams's testimony to show that there was no relationship between Adams and defendant, and to show "that he might have been - - had something to do with [the victim's] death." The trial court ruled that the only arguable relevance of Adams's testimony was that his differing stories about his whereabouts was suggestive of his guilt, but that this alone was not enough to connect him to the crime. Accordingly, the court excluded Adams's proposed testimony because it was not relevant. It further ruled that, to the extent the proposed testimony could be considered minimally relevant, its probative value was outweighed by its prejudicial effect and likelihood to cause confusion, and therefore, the testimony should be excluded under MRE 403.

On appeal, defendant relies on related statements to the police made by Carol Andrews, who was Adams's daughter and Peterson's girlfriend. Defendant contends that the statements, combined with Adams's proposed testimony, would show that Peterson murdered the victim. However, Andrews's statements were not offered in support of defendant's offer of proof below and defendant has not shown that he otherwise sought to introduce Andrews's statements at trial, or even that they would be admissible. In addition, defendant's assertion on appeal directly contradicts the reasons he provided below for wanting Adams to testify.

Reviewing the offer of proof below, we believe the trial court erred in stating that Peterson's or Adams's alleged participation in the offense would not be relevant to defendant's guilt or innocence, given defendant's defense that he had consensual sex with the victim who was alive when he last saw her. However, the trial court correctly noted that Adams's proposed testimony and his prior statements about his whereabouts would be, at best, only marginally probative. The trial court also did not abuse its discretion when it found that the likely confusion engendered by his testimony would substantially outweigh any probative value of the testimony. Unlike Peterson, Adams never stated that he killed or assaulted the victim, or participated in the offense. No physical evidence linked Adams to the crime, or to the scene of the murder. Nor could the defense have shown that Adams was lying about his whereabouts that evening without further testimony from the police officers or others to whom he spoke. Thus, to the extent that defendant could have shown that Adams's prior statements to others would have been admissible, this would have effectively caused a trial within a trial. And even if the jury were to accept as true Adams's statement that he loved the victim, this alone would not establish a

motive for him to kill her and would be marginally probative at best given the absence of evidence connecting him to the crime. Likewise, testimony that Adams thought Peterson killed the victim would not be relevant absent a foundational showing that Adams had personal knowledge of facts supporting that belief. Defendant does not discuss these issues on appeal.

For these reasons, defendant has failed to show that the trial court abused its discretion by excluding Adams's proposed testimony on the ground that it was not relevant, or in determining that any probative value that the evidence might have would be substantially outweighed by its prejudicial effect or likelihood to cause confusion, justifying its exclusion under MRE 403.

## C. OTHER WITNESSES

Defendant also complains that he was improperly precluded from calling additional defense witnesses, namely, David McNamara, Tony Prentice, and Allen Morrill. We reject this claim of error because there is no indication that defendant sought to call these witnesses at trial. To preserve a challenge to the exclusion of evidence, a party must make an offer of proof unless the substance of the evidence is apparent. MRE 103(a)(2). Although defendant offers reasons why he believes these witnesses could have provided relevant testimony to show that Peterson was the actual murderer, he made no attempt to call these witnesses at trial, and he never made an offer of proof of their proposed testimony. Moreover, he has not shown that the substance of any questioning at trial dealt with the proposed testimony of these witnesses. Therefore, defendant has failed to demonstrate a plain error affecting his substantial rights with respect to these witnesses.

## III. PROSECUTOR'S CONDUCT

Defendant next argues that he is entitled to a new trial because of the prosecutor's misconduct at trial. Defendant acknowledges that none of his claims of prosecutorial misconduct were preserved with an appropriate objection at trial, leaving the claims unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). Error requiring reversal will not be found if a curative instruction could have displaced any prejudiced caused by the prosecutor's improper argument. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005). Defendant further argues that defense counsel was ineffective for failing to object to the prosecutor's misconduct. Because defendant did not raise a claim of ineffective assistance of counsel in the trial court, our review of that issue is limited to errors apparent from the record. *Snider*, 239 Mich App at 423; *Ginther*, 390 Mich at 443.

Defendant first argues that the prosecutor improperly questioned him about whether he had heard earlier testimony that semen was found on the shirt sample and that the stain matched defendant's DNA profile. Defendant contends that this questioning was improper because no such testimony had previously been offered. A prosecutor may not argue facts not in evidence or mischaracterize the evidence, but may argue reasonable inferences arising from the evidence. *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Defendant correctly asserts that the prosecutor had not previously elicited actual *testimony* concerning the possible DNA match for a stain found on the victim's shirt. Instead, as both parties agree, it was actually a laboratory report that contained the DNA findings linking defendant's DNA to one of the shirt

stains. One of the stains was inconclusive as to any DNA. However, testing of the other stain showed a match for 12 out of 16 loci to defendant's DNA in the non-sperm fraction, and could not exclude defendant as a match to 3 more loci. But to the extent that the prosecutor mischaracterized the evidence by referring to prior *testimony*, the error did not affect defendant's substantial rights because other evidence, specifically the laboratory report, linked the shirt stain to defendant's DNA. Had defense counsel objected, the prosecutor could have rephrased his question to discuss the report itself, which was admitted at trial. Therefore, any error by the prosecutor does not require reversal, and defendant was not prejudiced by defense counsel's failure to object to the prosecutor's questioning at trial.

Defendant next argues that the prosecutor misrepresented during closing argument testimony concerning the period of time sperm can survive outside a male body. After reviewing the record, it appears that both the prosecutor and defense counsel were mistaken as to which witness provided the testimony at issue. The thrust of the prosecutor's statement was also incorrect. Although the prosecutor maintained that the witness had stated that sperm cells could last only 24 hours, the witnesses who testified on this subject indicated that a variety of factors affected sperm viability, and that cells could last up to five days in a living woman's body, or longer in a woman who died shortly after intercourse. However, the misstatement did not affect defendant's substantial rights because defendant admitted that he had sexual intercourse with the victim, the testimony was essentially equivocal concerning the possible sperm survival time, and the jury was presented, via defense counsel's misplaced objection, with the information that the prosecutor's characterization of the evidence was wrong. In addition, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citations omitted). The trial court properly instructed the jury that the attorneys' statements and arguments are not evidence and that the jury should only accept those statements that are supported by the evidence or by the jury's own common sense and general knowledge. The court's instructions were sufficient to protect defendant's substantial rights. We also reject defendant's related claim of ineffective assistance of counsel. Counsel did object, albeit unsuccessfully and under his own slight misunderstanding of the testimony. In any event, because the trial court's instructions were sufficient to protect defendant's rights, defendant was not prejudiced by counsel's failure to make a more specific objection.

Defendant next argues that the prosecutor mischaracterized the testimony of the medical examiner who, when asked about the possible effects of the victim's hysterectomy, stated that she would not have had much of a sex drive due to reduced estrogen levels. The prosecutor's statement that the witness had testified that the victim would have "had little to no sex drive" was not a blatant misstatement of the witness's testimony, and thus does not rise to the level of plain error. Moreover, any perceived prejudice could have been cured by an appropriate objection and, even without an objection, the trial court protected defendant's substantial rights by instructing the jury that the attorneys' statements and arguments are not evidence, and that the jury should only accept those statements that are supported by the evidence or by the jury's own common sense and general knowledge. Therefore, this claim does not warrant appellate relief.

With regard to defendant's related ineffective assistance of counsel claim, it appears that, rather than object, defense counsel decided to simply make the argument that the prosecutor had not presented any evidence that the victim was not taking estrogen, and that the witness had not

seen the victim when she was alive and thus could not testify about her behavior. This in turn led the prosecutor, during rebuttal argument, to retreat from his previous remarks and maintain that his earlier argument was only meant to cast doubt on defendant's assertion that the victim specifically sought him out for sexual activity for no apparent reason. Counsel's decision to deal with the issue in this manner was not objectively unreasonable. In addition, given the trial court's instructions that the attorneys' statements are not evidence, defendant was not prejudiced by the prosecutor's remarks. *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher