*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant/Cross-Appellee,

v

MICHAEL JEFFERY JOHNSON,

        Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
June 18, 2019

No. 344322
Berrien Circuit Court
LC No. 1980-001229-FH

Before: BECKERING, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

The prosecution appeals by leave granted the trial court's order granting defendant's MCR 6.500 motion for relief from judgment. Defendant cross-appeals the same order. In August 1980, defendant pled guilty to second-degree murder, MCL 750.317, for a crime he committed as a juvenile, and the sentencing court sentenced him to life with the possibility of parole. As a result of defendant's 2017 motion for relief from judgment, the trial court held that this sentence was unconstitutional under *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and it ordered that defendant be resentenced. For the reasons set forth below, we reverse.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

This case involves a defendant who was sentenced as a juvenile to life with the possibility of parole for murdering his classmate. Defendant was 17 years old at the time of the offense. Defendant was attempting to sexually assault the victim when he panicked, tied her hands behind her back, and pushed her into a steep irrigation ditch. Defendant knew that the victim fell into the water head first, and he waited approximately five minutes, until he no longer heard her splashing, before leaving. He admitted that he intended to kill the victim to keep her from telling the authorities that he had tried to sexually assault her.

Defendant has now served nearly 40 years in prison.[1]  He has been eligible for seven regularly scheduled parole board reviews during his time in prison.  The Board personally interviewed him the first four times, in 1986, 1991, 1996, and 2001.  Each interview resulted in a "no interest" decision with no reason provided.  The 2001 letter also noted:

> The Parole Board acknowledges the many positive accomplishments you have made throughout your years of incarceration.  At this time the parole board has voted not to advance your case to the public hearing stage of the lifer law process.  Your next review/interview will be in five (5) years.  The parole board urges your continued positive adjustment.

For the next three reviews, the parole board declined to interview defendant and instead chose to do a "file review."  Those reviews resulted in a "no interest" decision in 2006, 2011, and 2016, without providing a reason.

In January 2017, defendant filed a motion for relief from judgment, MCR 6.502, arguing that he is serving a de facto life sentence that offers him no "meaningful opportunity for release" in violation of the Constitution, citing various relevant federal cases.[2]  He argued that recent research involving the juvenile's brain development qualified as newly discovered evidence because none of that research was available when he was sentenced.  Defendant also argued that he was entitled to be resentenced because the purpose and effect of his sentence has not afforded him a meaningful opportunity for release and that his sentence is actually longer than juveniles convicted of first-degree murder and who have since received term of years sentences.  See MCL 769.25(9).  Defendant also contended that state statutes governing his sentence fail to protect his constitutional liberty interest in violation of the due-process clause.  Defendant supported his motion with various letters in support of his release, including multiple letters from the victim's parents, a referral from the warden of the prison, and letters from multiple Michigan Department

---

[1] Defendant has mounted a number of challenges to his conviction and sentence.  He challenged the voluntariness of certain incriminating statements made to the police, the factual basis for his guilty plea, and the trial court's failure to advise him that second-degree murder was a "Proposal B offense," MCL 791.234(4), which could negatively affect his eligibility for parole.  *People v Johnson*, unpublished per curiam opinion of the Court of Appeals, issued October 8, 1982 (Docket No. 55053).  In 2003, he moved for relief pursuant to MCR 6.500, but later withdrew his motion.  In 2009, he filed a motion pursuant to MCR 6.508(D)(*iv*), in which he argued that the parole board practices were unconstitutional because they ex post facto altered the nature of defendant's sentence.  The trial court denied the motion, and this Court and our Supreme Court denied his applications for leave to appeal.  *People v Johnson*, unpublished order of the Court of Appeals, entered January 25, 2010 (Docket No. 295013); *People v Johnson*, 488 Mich 1038 (2011).

[2] *Roper v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005); *Graham v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010); *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

of Corrections employees. Defendant included with his motion numerous awards and positive reviews for his performance in prison.

After a hearing on defendant's motion, the trial court held that defendant's due-process, equal protection, and Eighth Amendment constitutional rights were violated by the lack of a meaningful opportunity for release afforded to a juvenile under Michigan's parole system. This appeal followed.

## II. MCR 6.500 MOTION FOR RELIEF

The prosecution first argues that the trial court erred in applying the newly discovered evidence exception to the prohibition on successive motions for relief from judgment.

In a motion for relief pursuant to MCR 6.500 *et seq.*, a defendant has the burden to establish entitlement to relief. MCR 6.508(D). A defendant is generally only entitled to file one motion for relief from judgment. MCR 6.502(G)(1). However, this rule is not absolute. MCR 6.502(G)(2) permits the filing of a successive motion under two circumstances:

> A defendant may file a second or subsequent motion based on a *retroactive change in law that occurred after the first motion for relief* from judgment or a claim of *new evidence that was not discovered* before the first such motion. The clerk shall refer a successive motion that asserts that one of these exceptions is applicable to the judge to whom the case is assigned for a determination whether the motion is within one of the exceptions. [Emphasis added.]

Any successive motion that does not assert one of these two exceptions is to be returned to the defendant without filing by the court. MCR 6.502(G)(1). No appeal of the denial or rejection of a successive motion is permitted. MCR 6.502(G)(1).

Defendant had already filed a motion for relief from judgment in 2009 before filing the motion involved in the instant appeal. In the case at bar, defendant invoked the new-evidence exception, in support of which he identified as a series of scientific studies regarding the development and maturation of the human brain. However, it is clear from defendant's argument, and the trial court's ruling, that both defendant and the trial court relied less on newly discovered evidence and more on "a retroactive change in the law that occurred after [his] first motion for relief." MCR 6.50(G)(2). Defendant's successive motion was arguably reviewable based on retroactive changes in the law; specifically with regard to how *Miller* and related cases interpreting and extending its principles to juvenile offenders sentenced to *de facto* life sentences affected defendant's sentence. We conclude, therefore, that the trial court did not err in granting defendant's successive motion for relief from judgment.

## III. ENTITLEMENT TO RESENTENCING

The prosecution next argues that the trial court erred as a matter of law in concluding that *Miller* and related cases apply to defendant's valid sentence. According to the prosecution, those cases do not apply to defendant's sentence of life with eligibility for parole after 10 years.

Whether the Michigan parole system operates in a constitutional manner is a very different question from whether defendant was sentenced in a constitutional manner, and requires a different kind of legal procedure. We agree.

In *Miller*, the Supreme Court of the United States held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." *Miller*, 567 US at 465. The Supreme Court explained:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it. [*Id.* at 477-478 (quotation marks and citation omitted).]

In 2016, the Supreme Court clarified that although "*Miller*'s holding had a procedural component" because it "require[d] a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence," "*Miller* announced a substantive rule of constitutional law" that applied retroactively to juvenile offenders. *Montgomery v Louisiana*, __ US __, __; 136 S Ct 718, 734; 193 L Ed 2d 599 (2016) (quotation marks and citations omitted).

*Miller* and *Montgomery* clearly apply to juveniles sentenced to life in prison *without* the possibility of parole. One month after granting leave in the instant case, this Court addressed whether *Miller* and *Montgomery* invalidated a sentence of life *with* the possibility of parole in *People v Williams*, __ Mich App __; __ NW2d __ (2018) (Docket No. 339701).[3] In *Williams*, a jury convicted the defendant in 1987 of "first-degree murder, MCL 750.316, second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-

---

[3] The Michigan Supreme Court is currently holding the defendant's application for leave to appeal in abeyance in *Williams*, pending the Court's decision in *People v Turner* (Docket No. 158068), as that decision may resolve an issue raised in *Williams*. *People v Williams*, ___ Mich ___; ___ NW2d ___ (Issued April 5, 2019, Docket No. 158853). In the meantime, *Williams* remains binding precedent.

-4-

firearm), MCL 750.227b." *Williams*, __ Mich App at __; slip op at 1. The trial court sentenced the defendant to "mandatory life imprisonment without the possibility of parole for his first-degree murder conviction, life with the possibility of parole for his second-degree murder conviction, and a consecutive two years' imprisonment for his felony-firearm conviction." *Id*. In response to *Miller* and *Montgomery*, "the prosecution filed a notice to seek a term-of-years sentence for defendant's first-degree murder conviction[,]" and the trial court eventually resentenced him to "25 to 60 years' imprisonment for the first-degree murder conviction, leaving the other two sentences intact." *Id*. at __; slip op 1-2. "Defendant later filed a motion for relief from judgment, in which he argued that he was entitled to resentencing on his second-degree murder conviction because his life with the possibility of parole sentence was also invalidated by *Miller* and *Montgomery*." *Id*. at __; slip op at 2. The trial court agreed, and the prosecutor appealed. *Id*.

On appeal, this Court discussed the backdrop provided by the United States Supreme Court's reasoning and holdings in *Miller* and *Montgomery*, and then ruled as follows:

> Against this backdrop, it is clear that, at maximum, *Miller* and *Montgomery* guarantee that defendants convicted as juveniles are afforded " 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Miller*, 567 US at 479, quoting *Graham*[*v Florida*], 560 US [48,] 75[; 130 S Ct 2011; 176 L Ed 2d 825 (2010)]. At minimum, these cases apply only to mandatory sentences of life with the possibility of parole. See, e.g., *People v Wines*, __ Mich App __, __; NW2d __ (2018) (Docket No. 336550); slip op at 3; lv pending, ("[T]he constitutional holding in *Miller* applied only to life-without-parole decisions."). Here, under either interpretation, defendant's sentence of life with the possibility of parole satisfied *Miller*'s mandate. Defendant once served a sentence of life without the possibility of parole, but is now eligible for parole on each of his sentences. Stated differently, defendant has been granted a meaningful opportunity to obtain release, see *Miller*, 567 US at 479, on his sentences for first- and second-degree murder. And because defendant has some meaningful opportunity to obtain release on his sentence of life with the possibility of parole, that sentence was not invalid under *Miller*. [*Williams*, __ Mich App at __; slip op at 4.]

As a published opinion, *Williams* dictates the outcome of this issue. MCR 7.215(C)(2). Thus, whether we view *Miller* and *Montgomery* as applicable only to juveniles sentenced to mandatory life without the possibility of parole, or as guaranteeing juvenile offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," defendant's sentence of life with the possibility of parole satisfies *Miller's* mandate. *Miller*, 567 US at 479, quoting *Graham*, 560 US at 75. In other words, defendant's sentence of life with the possibility of parole is not invalid under *Miller* such that he is entitled to resentencing.

Defendant seeks to distinguish his case from *Williams* by pointing out that, unlike the *Williams* defendant, he has presented evidence showing that a parolable life sentence does not actually afford juvenile offenders the same meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation that a term-of-life sentence imposed to comply with *Miller* affords other juvenile offenders. The essence of defendant's complaint seems to be that

-5-

the review process for term-of-life juvenile offenders provides meaningful review and relevant information and results in appealable decisions. By contrast, the process for parolable lifers is similar to the review process for prisoners serving non-parolable life sentences who might be seeking pardon or commutation, and leaves juvenile offenders in a state of prison purgatory, with no information for improvement and no appealable decisions.

We explained the parole process for a prisoner sentenced to a term of years in considerable detail in *In re Elias*, 294 Mich App 507, 511-521; 811 NW2d 541 (2011).

> A prisoner sentenced to a term of years comes under the jurisdiction of the Board when he or she has served the minimum sentence, adjusted for any good time or disciplinary credits. MCL 791.233(1)(b) through (d); MCL 791.234(1) through (5). Several months before the prisoner's earliest release date, a DOC staff member must conduct an in-depth evaluation of the prisoner in order to advise the Board. A prison staff member prepares for the Boards review a "Parole Eligibility Report" (PER) summarizing the "prisoner's prior record, adjustment and other information[.]" DOC Policy Directive 06.05.103, p. 1; see also MCL 791.235(7). In preparing a PER, the staff member interviews the prisoner and gathers vital documentation, such as the results of any mental-health examinations and evaluations from prison programs. DOC Policy Directive 06.05.103, ¶¶ I, M, p. 2. The PER "shall contain information as required by MCL 791.235" and any other information requested by the Board for its review. *Id*. at ¶ O, p. 2. Prison officials submit the PER to the Board's "Case Preparation Unit," along with the contents of the prisoner's central file. The unit uses the PER and file documents to score the prisoner's parole guidelines. DOC Policy Directive 06.05.100, ¶ D, p. 1.

> Statutorily mandated parole guidelines form the backbone of the parole-decision process. As described by this Court in *In re Parole of Johnson*, 219 Mich App 595, 599, 556 NW2d 899 (1996), "[t]he parole guidelines are an attempt to quantify the applicable factors that should be considered in a parole decision" and are "intended to inject more objectivity and uniformity into the process in order to minimize recidivism and decisions based on improper considerations such as race." [*In re Elias*, 294 Mich App at 511-12 (footnotes and internet citations to DOC documents omitted).]

> * * *

"That score is then used to fix a probability of parole determination for each individual on the basis of a guidelines schedule.[4] Prisoners are categorized

---

[4] Although decisions by the parole review board are not grievable, prisoners may "challenge the calculation of their parole guideline score, including the accuracy of the information used in calculating the score, by filing a grievance pursuant to Policy Directive 03.02.130, 'Prisoner/Parolee Grievances.' " Policy Directive 06.05.100, ¶ G.

under the guidelines as having a high, average, or low probability of parole." *Johnson*, 219 Mich App at 599, 556 NW2d 899. A prisoner with a score of +3 or greater merits placement in the high-probability category, a score of -13 or less warrants assignment to the low-probability category, and a score between those figures falls within the average-probability category. DOC Policy Directive 06.05.100, Attachment A, p. 10. [*Id.* at 518.]

A prisoner being considered for parole may also undergo an interview conducted by one or more Board members assigned to the prisoner's panel. If the prisoner's guidelines score falls within either the high- or low-probability-of-parole categories and the Board intends to follow the guidelines recommendation to grant or deny parole respectively, the Board need not interview the prisoner. . . . Following the parole interview, a "Case Summary Report" is created for the Board's review." [*Id.*]

In 2005, the DOC began implementing the Michigan Prisoner ReEntry Initiative (MPRI) in various stages. The MPRI is a multiagency, multicommunity project designed to promote public safety and reduce the likelihood of parolee recidivism. [*Id.* at 519.]

* * *

A staff member from the DOC must formulate a TAP[5] with each prisoner, mostly to assess the prisoner's reentry into society, but also to assist the Board in rendering its parole decision. [*Id.* at 519-520.]

"Ultimately, 'matters of parole lie solely within the broad discretion of the [Board] . . . .' " *Id.* at 521, quoting *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003). "Notwithstanding, the Legislature has clearly imposed certain statutory restrictions on the Board's exercise of its discretion." *In re Elias*, 294 Mich App at 521-522. For example:

The parole board may depart from the parole guidelines by denying parole to a prisoner who has a high probability of parole as determined by the guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. [MCL 791.233e(6).]

Once the Board has rendered its decision, it must issue in writing "a sufficient explanation for its decision" to allow "meaningful appellate review," *Glover v*

---

[5] TAP is an acronym for Transition Accountability Plan, "the lynchpin of the MRPI Model." *In re Elias*, 294 Mich App 507, 519; 811 NW2d 541 (2011) (quotation marks and citation omitted). The TAPs "consist of summaries of the offender's Case Management Plan at critical junctures in the transition process[] and are prepared with each prisoner . . . at the point of the parole decision . . . ." *Id.* (quotation marks and citation omitted).

*Parole Bd*, 460 Mich. 511, 519, 523; 596 NW2d 598 (1999), and to inform the prisoner of "specific recommendations for corrective action" if necessary "to facilitate release," MCL 791.235(12). [*In re Elias*, 294 Mich App at 522–23.]

By contrast, parolable lifers sentenced for a crime committed before October 1, 1992, as is the case with the present defendant, become eligible for parole after they have served 10 calendar years of their sentence. MCL 791.234(7)(a). The prisoner may be placed on parole according to the conditions prescribed in MCL 791.234(8), which provide in relevant part:

> (a) At the conclusion of 10 calendar years of the prisoner's sentence and thereafter as determined by the parole board until the prisoner is paroled, discharged, or deceased, and in accordance with the procedures described in subsection (9), 1 member of the parole board shall interview the prisoner. The interview schedule prescribed in this subdivision applies to all prisoners to whom subsection (7) applies, regardless of the date on which they were sentenced.

> (b) In addition to the interview schedule prescribed in subdivision (a), the parole board shall review the prisoner's file at the conclusion of 15 calendar years of the prisoner's sentence and every 5 years thereafter until the prisoner is paroled, discharged, or deceased. A prisoner whose file is to be reviewed under this subdivision shall be notified of the upcoming file review at least 30 days before the file review takes place and must be allowed to submit written statements or documentary evidence for the parole board's consideration in conducting the file review.

> (c) A decision to grant or deny parole to the prisoner must not be made until after a public hearing held in the manner prescribed for pardons and commutations in sections 44 and 45. Notice of the public hearing must be given to the sentencing judge, or the judge's successor in office. Parole must not be granted if the sentencing judge files written objections to the granting of the parole within 30 days of receipt of the notice of hearing, but the sentencing judge's written objections bar the granting of parole only if the sentencing judge is still in office in the court before which the prisoner was convicted and sentenced. A sentencing judge's successor in office may file written objections to the granting of parole, but a successor judge's objections must not bar the granting of parole under subsection (7). If written objections are filed by either the sentencing judge or the judge's successor in office, they must be made part of the prisoner's file.

Even a cursory comparison of the parole procedures applicable to juvenile offenders resentenced after *Miller* to term-of-years sentences with those applicable to juvenile offenders who received parolable life sentences leads to the conclusion that parole procedures are more favorable to the former than to the latter. "[P]arole guidelines need not be prepared for prisoners serving parolable life sentences until the parole board is faced with the decision whether to release the prisoner." *Jackson v Dep't of Corrections*, 247 Mich App 380, 384; 636 NW2d 305 (2001). In other words, parolable lifers do not get the benefit of the parole guidelines until after an interview with a member of the parole board, after the sentencing judge or the judge's

successor has had an opportunity to register any objections, and after a public hearing of the type contemplated for prisoners seeking pardon or commutation. If after regular review of the parolable lifer's paper file the board issues a "no interest" decision, it is not required "to inform the prisoner of "specific recommendations for corrective action" if necessary "to facilitate release," MCL 791.235(12), because a "no interest" decision is not a "final determination." *Gilmore v Parole Bd*, 247 Mich App 205, 227-228; 635 NW2d 345 (2001). Likewise, a "no interest" decision is not appealable because it did not progress "through all the steps in the parole eligibility process to the point where an appealable 'ultimate decision' to grant or deny parole was rendered." *Id*. at 230-231. As envisioned, the parole procedure does give juvenile offenders sentenced to parolable life an opportunity to submit written statements or documentary evidence establishing reasons for parole, such as their maturity and rehabilitation. However, we are sympathetic to defendant's point that the procedures for term-of-years sentences are better than those for parolable life sentences, and that the potential for meaningful review in his case has gone largely unrealized for an unknown reason.

The essence of defendant's sentence challenge, however, is not that the sentence itself is invalid. Rather, it is that the policies and procedures of the parole board are unconstitutional based on an application of *Miller* and *Graham* to those policies and procedures because they deprive defendant of any real possibility of parole, and hence, do not "give [juvenile] defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 US at 75. However, invalidating defendant's valid sentence and resentencing him to a term-of years is not the answer. The appropriate vehicle in which to seek redress of the alleged wrong done by the parole board is a claim for relief under 42 USC § 1983 filed against the parole board. See *Wershe v Combs*, 763 F 3d 500 (CA 6, 2014) (indicating that a § 1983 action was the appropriate vehicle to challenge a change in the procedures used to determine whether a defendant is eligible for parole); *Greiman v Hodges*, 79 F Supp 3d 933 (SD Iowa, 2015) (denying parole board's motion to dismiss the juvenile offender's § 1983 action alleging that parole procedures denied him a meaningful opportunity to obtain release); *Hayden v Keller*, 134 F Supp 3d 1000 (ED NC, 2015) (juvenile offender prevailed in § 1983 motion alleging that North Carolina parole process denied him a meaningful opportunity to obtain parole release), app dismissed 667 Fed Appx 416 (CA 4, 2016).[6]

---

[6] Defendant relied on *Atwell v Florida*, 197 So 3d 1040 (2016), in which Florida's Supreme Court held that the defendant's sentence of parolable life violated the Eighth Amendment because, under the statutes governing Florida's parole process, Atwell would not be eligible for parole until 2130, thus effectively making his parolable life sentence a *de facto* life sentence. *Atwell*, 197 So 3d at 1050. The Florida court concluded that the only way to correct Atwell's sentence was to remand the matter for resentencing. *Id*. Like Atwell, the present defendant argues that the parole process has effectively turned his sentence into a *de facto* life sentence without the possibility of parole, and that resentencing is the only way to correct it. However, the Florida Supreme Court abrogated *Atwell* in *Franklin v Florida*, 258 So 3d 1239 (2018). Relying on *Virginia v LeBlanc*, __ US __, 137 S Ct 1726; 198 L Ed 2d 186 (2017), which held that because the Virginia geriatric release program employed normal parole factors, it satisfied

In sum, a sentence of life with the possibility of parole was a valid sentence for second-degree murder under state law, MCL 750.317, and it meets the demands of *Miller* and its associated cases, *Williams*, __ Mich App at __; slip op at 4. "A trial judge has the authority to resentence a defendant only when the previously imposed sentence is invalid." *People v Moore*, 468 Mich 573, 579; 664 NW2d 700 (2003). Defendant's sentence is not invalid; therefore, he is not entitled to resentencing.

## IV. CONSTITUTIONAL VIOLATIONS

The prosecution argues that the trial court erred as a matter of law in rather summarily concluding that defendant's sentence violates his due process and equal protection rights. We agree.

In order to have a protected liberty interest, defendant must have a right or entitlement to something, not just a possibility. See *Glover*, 460 Mich at 521. "[T]he due process right at a typical sentencing hearing is the right to be sentenced on the basis of accurate information." *People v Eason*, 435 Mich 228, 239; 458 NW2d 17 (1990). In addition, because sentencing is a critical stage of criminal proceedings, a defendant has a Sixth Amendment right to counsel. *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). Defendant has not argued that the sentencing court violated either of these due-process rights, nor has he identified any other due-process right that the sentencing court allegedly violated. Defendant's original sentence provided him the opportunity for parole; to the extent he implies that the trial court should have made obtaining parole easier by sentencing him to a term-of-years sentence, he again demonstrates that his dispute is with the parole board, not the sentencing court. Moreover, the trial court's sentence allowed defendant to be considered for parole after ten years; a term-of-years sentence would likely have delayed by a significant period of time his opportunity to be considered for parole.

The equal protection clause, US Const, Am XIV, Const 1963, art 1, § 2, does not create substantive rights; rather, it embodies the general rule that states must treat like cases alike but may treat unlike cases accordingly. *Vacco v Quill*, 521 US 793, 117 S Ct 2293; 138 L Ed 2d 834 (1997). The equal protection clause guarantees that states must treat people similarly situated alike, but it does not guarantee that people in different circumstances will be treated the same. *In re Parole of Hill*, 298 Mich App 404, 420; 827 NW2d 407 (2012).

Defendant sought relief from judgment on the ground that his sentence was invalid. A trial court may sentence a juvenile convicted of first degree murder to life in prison without the possibility of parole, MCL 750.316, MCL 769.25(2), MCL 769.25a(3), or to a term of years with

---

*Graham*'s "meaningful opportunity" requirement, the Florida Supreme Court held that it had previously misapplied *Graham* and *Miller*. *Franklin*, 258 So 3d at 1241. The Florida court concluded that because "[the defendant's] sentences include eligibility for parole there is no violation of the categorical rule announced in *Graham*. *Id.* A petition for certiorari of *Franklin* was docketed in the United States Supreme Court on April 4, 2019.

-10-

a maximum of not more than 60 years and a minimum between 25 and 40 years, MCL 769.25(9). Juveniles sentenced for first-degree murder are not eligible for parole until they have served at least 25 years in prison. A trial court may sentence a juvenile convicted of second-degree murder to a parolable life sentence or to a term of years. MCL 750.317. Juveniles sentenced for second-degree murder before October 1, 1992, are eligible for parole after 10 years, while those sentenced after October 1, 1992, are eligible for after 15 years.

Neither the trial court nor defendant points to anything in these statutes that discriminates against juveniles sentenced for second-degree murder. To the extent that the trial court construed an equal protection violation based on the parole procedures applicable to defendant when compared to those applicable to a juvenile with a term of years sentence, the fact that these two groups are treated differently does not give rise to an equal protection violation because they are not similarly situated. To be considered similarly situated, the challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects. See *People v James*, __ Mich App __; __ NW2d __ (2018) (Docket No. 342504); slip op at 4. Although both groups are comprised of juvenile offenders, each group has been convicted of a materially different crime, and those juveniles sentenced to parolable life are not similarly situated to those sentenced to life without the possibility of parole or to a term-of-years sentence. Therefore, although one would think that a juvenile receiving a parolable life sentence for second-degree murder would have an easier parole consideration process than a juvenile sentenced to a term of years for first degree murder, their different treatment by the statutes pertaining to parole procedures does not constitute an equal protection violation. See *In re Parole of Hill*, 298 Mich App at 420. Finally, to the extent that the trial court's opinion regarding equal protection arises from the parole board's handling of defendant's opportunities for parole, this is not a sentencing matter. As we said before, the appropriate vehicle in which to seek redress of the alleged wrong done by the parole board is a claim for relief under 42 USC § 1983 filed against the parole board.

## V. DEFENDANT'S CROSS-APPEAL

On cross-appeal, defendant argues that the trial court erred in rejecting his argument for resentencing based *People v Coles*, 417 Mich 523, 549; 339 NW2d 440 (1983), overruled in part and on other grounds by *People v Milbourn*, 453 Mich 630, 644; 461 NW2d 1 (1990). We disagree.

Relevant to the present appeal, MCR 6.508(D)(3) provides that a court may not grant relief on a motion for relief from judgment which:

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

-11-

* * *

(ii) in a conviction entered on a plea of guilty . . . the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;

(iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;

(iv) in the case of a challenge to the sentence, the sentence is invalid. [MCR 6.508(D)(3).]

Thus, in order for defendant to be entitled to relief under MCR 6.508(D)(3), defendant had to show "good cause" for his failure to raise the *Coles* argument in his prior motion for relief, and "actual prejudice," which, in this case, involves demonstrating that his parolable life sentence for second-degree murder was invalid. Assuming for the sake of argument that defendant established the necessary "good cause" by way of ineffective assistance of his appellate counsel in failing to raise a *Coles* argument when it was issued three years after defendant's sentence, defendant has failed to meet his burden to establish "actual prejudice"; specifically, he has failed to show that his sentence for second-degree murder was invalid at the time.

The *Coles* Court held in relevant part that, in order to facilitate appellate review, sentencing courts must articulate on the record the reasons for the sentences they were imposing. *Coles*, 417 Mich at 549. Further, an appellate court

shall, upon a defendant's request in an appeal by right or in an appeal by leave granted, review a trial court's exercise of discretion in sentencing, but may afford relief to the defendant only if the appellate court finds that the trial court, in imposing the sentence, abused its discretion to the extent that it shocks the conscience[7] of the appellate court. If under this standard the appellate court deems that resentencing is warranted, the appellate court shall, after specifically stating its reasons for such action, remand the case to the trial court for resentencing. [*Id.* at 550.]

Defendant admitted at his plea colloquy that he had tied the victim's hands behind her back, pushed her and caused her to fall head first into the water, waited until he no longer heard her splashing before he left, and that he had intended to kill her. In addition, the presentence investigation report prepared for his

---

[7] The "shocks the conscience" test was later replaced with a proportionality test. *People v Milbourn*, 435 Mich 630, 635-636; 461 NW2d 1 (1990).

sentencing revealed that prior to the offense giving rise to his guilty plea, defendant had been arrested and charged with first-degree criminal sexual conduct upon a different victim, and that also involved tying the victim's hands behind her back. In that matter, defendant had been allowed to plead guilty to assault with a deadly weapon. In imposing sentence, the trial court explained:

"[A]fter deep, careful, lengthly [sic] consideration and soul-searching, I have concluded that the sentence in this case should be life. This does not slam the door entirely as to future possible release. However, it does give an insurance [sic] that there will be careful consideration before there is a release.

Furthermore, other than a contingent one that I will later mention, I make no recommendations as to what anyone should or should not do regarding future possible release.

* * *

I further make recommendations that he be given complete psychological, psychiatric, physical examinations, whatever is necessary, and that he be given the treatment as indicated by those examinations.

Thus, after considering the severity of defendant's actions, the trial court imposed a life sentence that appeared to take into consideration defendant's particular circumstances and need for treatment, and provided an eventual opportunity for possible release.

Defendant has failed to show that his sentence was invalid or disproportionate to the crime to which he pled guilty. Consequently, he has failed to show that he is entitled to relief from his sentence for second-degree murder of life with the possibility for parole. Because we conclude that defendant's *Coles* argument lacks merit, we decline to consider his associated claim of ineffective assistance of appellate counsel. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Reversed and remanded for entry of an order denying defendant's motion for relief from judgment. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

-13-