*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARLTON VUR ADAMS,

Plaintiff-Appellant,

v

PAROLE BOARD,

Defendant-Appellee.

FOR PUBLICATION
January 27, 2022
9:00 a.m.

No. 355588
Court of Claims
LC No. 20-000180-MB

Before: K. F. KELLY, P.J., and JANSEN and RICK, JJ.

PER CURIAM.

Plaintiff appeals by right the decision of the Court of Claims granting summary disposition to defendant, Parole Board, under MCR 2.116(I)(2) as the nonmoving party and denying plaintiff's motion for summary disposition under MCR 2.116(C)(8) and (10). We reverse.[1]

## I. BACKGROUND

This is the second time that plaintiff has been before this Court. The facts are not in dispute for purposes of this appeal. In our previous decision, we discussed the underlying facts:

At about 8:30 p.m. on September 13, 2010, Jeremy Easterbrook was riding his motorcycle southeast on M–37 at a speed in excess of the posted limit. [Plaintiff] was headed west on the same road when he began to turn left onto a cross street. Easterbrook struck the rear passenger wheel well of [plaintiff]'s truck, spinning it about 95 degrees and was killed in the accident. The first responding police officer spoke to [plaintiff], who stated that he never saw what hit him. The officer smelled intoxicants, so he had [plaintiff]'s blood drawn at about 10:30 that night. [Plaintiff]'s blood was tested at the Michigan State Police Crime Lab and found to contain one nanogram per milliliter of THC and a blood alcohol content

---

[1] Plaintiff was subsequently paroled after the Court of Claims decision. Therefore, we do not remand for further proceedings.

-1-

of 0.02. A state police reconstruction expert testified that his calculations suggested Easterbrook's motorcycle struck [plaintiff]'s truck at about 57 miles per hour, but an expert [plaintiff] retained opined that the motorcycle was traveling at least 100 miles per hour. This expert also estimated that the motorcycle would have been potentially visible to [plaintiff], had he looked, for about 9.5 seconds before impact. [*People v Adams*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2013 (Docket No. 311084), p 1.]

A jury found plaintiff guilty of operating a motor vehicle while having a controlled substance in his body (THC/marijuana), third offense, MCL 257.625(8); MCL 257.625(9)(c). Plaintiff also pleaded guilty to an unspecified probation violation. The jury acquitted plaintiff of operating a vehicle while having a controlled substance in his body causing death, MCL 257.625(4) and (8). Despite this acquittal, there was no dispute that Easterbrook died as a result of the accident. The trial court sentenced plaintiff to serve 30 to 60 months in prison for his conviction of operating a motor vehicle while having a controlled substance in his body, which was to begin on January 31, 2014, after plaintiff served time for his probation violation. We previously affirmed plaintiff's sentence.[2]

---

[2] *People v Adams*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2013 (Docket No. 311084). In his prior appeal, plaintiff argued that the trial court erred by assessing 50 points under offense variable (OV) 3, MCL 777.33. *Id*. at 1. This Court affirmed plaintiff's sentence, concluding that, although it was a "close call," the "preponderance of the evidence support[ed] that if [plaintiff] had not been driving with intoxicants in his blood he may have noticed the oncoming motorcycle and avoided driving in front of it." *Id*. at 3. Recently, our Supreme Court held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019). Our Supreme Court explained:

> "[W]hen a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." [*Id*. at 626-627 (cleaned up).]

This Court recently concluded that "[t]he *Beck* Court extended this presumption of innocence to sentencing, where the presumption shields the defendant from being held criminally responsible for the conduct upon which the jury acquitted the defendant." *People v Brown*, ___ Mich App___, ___; ___ NW2d ___ (2021) (Docket No. 352001); slip op at 4. See *People v Beesley*, ___ Mich App___, ___; ___ NW2d ___ (2021) (Docket No. 348921); slip op at 7 n 4, held in abeyance ___ Mich ___; 965 NW2d 558 (2021) ("[A] sentencing court may review a presentence investigation report containing information on acquitted conduct without violating *Beck* so long as the court does not rely on the acquitted conduct when sentencing the defendant, but if the sentencing court

-2-

During plaintiff's incarceration, his case was sent to defendant for parole review. Defendant denied parole. Subsequently, plaintiff requested that defendant reconsider its decision, then filed a complaint for a writ of mandamus in the Court of Claims to compel defendant to conduct another parole hearing. Plaintiff asserted that defendant had improperly considered acquitted conduct in its decision to deny him parole. Specifically, plaintiff argued that defendant had improperly considered Easterbrook's death despite the jury's having acquitted plaintiff of causing Easterbrook's death. Plaintiff relied on a recent decision of our Supreme Court, *People v Beck*, 504 Mich 605, 626-627; 939 NW2d 213 (2019), in which the Court held that a sentencing court may not consider acquitted conduct in its sentencing of a defendant. Plaintiff argued that *Beck*'s holding also applied to parole review decisions.

Plaintiff contended that he was not asking the Court of Claims to review the parole decision and that he was not appealing the Parole Board's decision. Rather, he was asking the Court of Claims to issue the writ to compel defendant to follow Michigan law by not improperly considering acquitted conduct in its review of his case. In order to do this, a new parole hearing would necessarily be required. Plaintiff filed a motion for summary disposition under MCR 2.116(C)(8) and (10), suggesting that there was no factual dispute and that the case revolved around a legal question. The Court of Claims disagreed with plaintiff and, instead, granted summary disposition in defendant's favor under MCR 2.116(I)(2) as the nonmoving party. The court agreed with defendant that plaintiff's mandamus action was essentially an improper appeal from a parole decision and that, under prior Michigan precedent, such an appeal could not stand. The court further held that plaintiff could not meet the elements for a writ of mandamus because, given the discretionary nature of parole, there was no clear legal duty owed to plaintiff by defendant. Finally, the court held that *Beck* applied only to sentencing decisions and not to parole decisions.

## II. ANALYSIS

Plaintiff argues that the Court of Claims erred in its classification of his writ as an improper appeal from a parole review decision. Plaintiff reiterates his contentions that he was not asking

---

specifically references acquitted offenses as part of its sentencing rationale, a *Beck* violation is apparent.") (cleaned up).

We note that *Beck* applies retroactively "to all cases, state or federal, pending on direct review or not yet final." *Id*. at ___ Mich App at___,; slip op at 7 n 4 (cleaned up). Accordingly, because plaintiff's direct appeal was final before *Beck* was decided, he cannot challenge his underlying sentence on that basis. However, we recognize that had *Beck* applied at the time plaintiff appealed his sentence, the 50 point OV 3 score imposed based on the conduct for which he was acquitted would have constituted reversible error. See *Brown*, ___ Mich App at___; slip op at 8 (holding that the trial court erred when it held the defendant responsible for the death of the victim of a shooting because the jury acquitted the defendant of second-degree manslaughter and voluntary manslaughter, thus, the defendant was not "criminally responsible" for the victim's death and the sentencing court could not consider "the actual shooting and death" when sentencing the defendant.); *Beck*, 504 Mich at 629 (holding that the sentencing court violated the defendant's due-process rights based on its finding by a preponderance of the evidence that the defendant committed the murder of which the jury acquitted him.).

the Court of Claims to review the parole decision but merely to direct defendant to follow Michigan law. Additionally, plaintiff contends that defendant had a clear legal duty to follow applicable law because *Beck* applied not only to sentencing decisions but also to parole review decisions. For the reasons explained below, we agree.

## A. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010) (cleaned up). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 590; 794 NW2d 76 (2010) (cleaned up). Questions of law are reviewed de novo. *Christenson v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354037); slip op at 3. Similarly, a decision "whether [a defendant has] a clear legal duty to perform and whether [a] plaintiff has a clear legal right to performance of any such duty" is reviewed de novo. *Id*. at ___; slip op at 3. In contrast, the trial court's decision whether to issue a writ of mandamus is reviewed for an abuse of discretion. *Younkin v Zimmer*, 497 Mich 7, 9; 857 NW2d 244 (2014). A court abuses its discretion when its decision is "outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). "A trial court necessarily abuses its discretion when it makes an error of law." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018).

## B. MOOTNESS

Before analyzing plaintiff's contentions on the merits, we first address the issue of mootness. As this appeal was pending before this Court, plaintiff was paroled. However, plaintiff has continued to advance his position on appeal because he believes that it is an issue of significant public interest that is likely to recur yet evade judicial review. We agree.

Issues involving mootness are questions of law that are reviewed de novo. See *Christenson*, ___ Mich App at ___; slip op at 3. "This Court's duty is to consider and decide actual cases and controversies." *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) (cleaned up). Generally, this Court does "not address moot questions or declare legal principles that have no practical effect in a case." *Id*. Mootness occurs when "an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Id*. (cleaned up). There is an exception, however, when an issue "is publicly significant, likely to recur, and yet likely to evade judicial review." *Id*. at 660 (cleaned up).

Given that parole decisions can result in the continued deprivation of liberty through ongoing incarceration, we agree with plaintiff that this matter involves an issue of significant public interest. Furthermore, as has been previously recognized, the timing of parole and the appellate process is such that this issue may continue to recur and yet evade judicial review. See, e.g., *People v Kaczmarek*, 464 Mich 478, 481; 628 NW2d 484 (2001) (stating that criminal

-4-

defendants "are likely to be on parole by the time their cases reach this Court" and addressing the appeal on its merits). Therefore, we hold that the exception to the mootness doctrine applies.

## C. WRIT OF MANDAMUS

Turning to the merits, we disagree with the Court of Claims' conclusion that mandamus relief was inappropriate in this case.

> [T]he issuance of a writ of mandamus is proper only where (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial and involves no exercise of discretion or judgment, and (4) no other remedy exists, legal or equitable, that might achieve the same result. [*Morales v Parole Bd*, 260 Mich App 29, 41; 676 NW2d 221 (2003).]

This Court has held, "A clear legal duty, like a clear legal right, is one that is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Hayes v Parole Bd*, 312 Mich App 774, 782; 886 NW2d 725 (2015) (cleaned up). "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Berry v Garrett*, 316 Mich App 37, 42; 890 NW2d 882 (2016) (cleaned up). This Court has held, "[W]here there has been a ministerial error or omission, the remedy of mandamus is available to prisoners." *Morales*, 260 Mich App at 42.

The Court of Claims dismissed plaintiff's action "[b]ecause mandamus cannot lie to set the confines of defendant's discretionary parole determinations . . . ." The court also concluded that plaintiff failed to establish that defendant had a "clear legal duty" to refrain from considering acquitted conduct. We disagree.

Once a prisoner is sentenced and placed within a correctional facility, he or she falls under the jurisdiction of defendant once "the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted, less good time and disciplinary credits, if applicable." MCL 791.234(1). "A prisoner must not be given liberty on parole until the board has reasonable assurance, after consideration of *all of the facts and circumstances*, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." MCL 791.233(1)(a) (emphasis added). MCL 791.234(11) provides that, in general,

> a prisoner's release on parole is *discretionary* with the parole board. The action of the parole board in granting a parole is appealable *by the prosecutor* of the county from which the prisoner was committed or the victim of the crime for which the prisoner was convicted. The appeal must be to the circuit court in the county from which the prisoner was committed, by leave of the court. [Emphasis added.]

Although a prisoner was previously able to apply for leave to appeal a Parole Board decision, this right of appeal by leave was subsequently eliminated by our Legislature. See *Morales*, 260 Mich App at 34-36. A prisoner has no right to parole and, therefore, "enjoys no constitutional or inherent

right to be conditionally released from a validly imposed sentence." *Id*. at 39 (cleaned up). Only the prosecutor or a victim may appeal a parole decision. MCL 791.234(11).

However, the Parole Board's discretion in making a parole decision is not without limitations. The Parole Board is required to "exercise and perform the powers and duties prescribed and conferred by this act." MCL 791.231a(5). The factors and circumstances that the Parole Board may consider in granting or denying parole are provided under MCL 791.233e, MCL 791.235, Mich Admin Code, R 791.7716 and Rule 791.7715. As part of exercising its discretion, the Parole Board may consider all "relevant factors" to the parole decision, "if not otherwise prohibited by law." MCL 791.233e(2)(e); see also MCL 791.233e(1)[3].We hold that the trial court erred by concluding that plaintiff failed to establish that defendant had the clear legal duty to perform the act requested. In this case, plaintiff sought to enforce defendant's obligation to comply with its statutory requirements and guidelines in exercising its discretion and issuing its parole decision. Plaintiff argued that the Parole Board was statutorily prohibited from considering facts prohibited by the Constitution, on the basis of *Beck*, under MCL 791.233e(2)(e). Plaintiff expressly argued that defendant had a "clear ministerial duty to obey the Michigan and US Constitutions." On the basis of defendant's statutory obligations and those governing its discretion under the administrative code, we conclude that defendant had a clear legal duty "inferable as a matter of law from uncontroverted facts," *Hayes*, 312 Mich App at 782, to refrain from considering facts prohibited by law under MCL 791.233e(2)(e), and that plaintiff had the ability to challenge defendant's alleged improper omission or ministerial error during their deliberation process and enforce defendant's statutory obligations through mandamus, *Morales*, 260 Mich App at 42.

The Court of Claims noted that it was "not entirely apparent [defendant] weighed the acquitted conduct" based on the Notice of Decision by defendant. Nonetheless, the court concluded that even if defendant relied on the acquitted conduct, plaintiff was not entitled to the relief requested because he sought to control the manner in which defendant exercised its discretion. However, as indicated, defendant's discretion is not without limitation, and it is required to comply with its statutory obligations. See MCL 791.231a(5).

Defendant asserts that plaintiff is requesting that they exercise their discretion in a particular manner. Mandamus is an "extraordinary remedy and it will not lie to review or *control the exercise of discretion* vested in a public official or administrative body." *Morales*, 260 Mich App at 41-42 (emphasis added). We recognize that the decision whether to grant parole is explicitly a matter of discretion. MCL 791.234(11). However, the issue in the instant case is whether defendant complied with their statutory obligations when it considered acquitted conduct in exercising their discretion. Plaintiff did not request an order requiring parole to be granted.

---

[3] MCL 791.233e(1) provides:

> The department shall develop parole guidelines that are consistent with section 33(1)(a) to govern the exercise of the parole board's discretion under sections 34 and 35 as to the release of prisoners on parole under this act. The purpose of the parole guidelines is to assist the parole board in making objective, evidence-based release decisions that enhance the public safety.

Rather, plaintiff requested that defendant comply with the applicable statute in undertaking its decision and conduct a new parole interview where the acquitted conduct is not considered on that basis. See *Teasel v Dept of Mental Health*, 419 Mich 390, 410; 355 NW2d 75 (1984) ("[M]andamus will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner.") Further, our Supreme Court has stated, "When agencies of government fail to perform duties imposed by the Legislature or the constitution, the courts will not hesitate to order performance." *Id*. at 411.

We conclude that plaintiff's legal right is also "inferable as a matter of law from uncontroverted facts," see *Hayes*, 312 Mich App at 782, on the basis of the limitations imposed on the Parole Board by statute, see *In re Parole of Hill*, 298 Mich App at 413. See also *Teasel*, 419 Mich at 414-415 (concluding that the plaintiff had a clear, legal right in the mental health code on the basis that the defendant had a clear legal duty to determine whether the plaintiff was suitable for release or a person requiring treatment as defined by law, and that the plaintiff did not seek to control the defendant's discretion, but to "compel [the defendant] to make an informed judgment.").

The Court of Claims also stated that plaintiff could have filed a petition for habeas corpus to obtain relief.[4] In *Jones v Dept of Corrections*, 468 Mich 646, 658; 664 NW2d 717 (2003), our Supreme Court held, "Where an official has a clear legal duty to act and fails to do so, the appropriate remedy is an order of mandamus." *Id*. The Court concluded that "a plaintiff may seek a writ of mandamus to compel compliance with the statutory duty," rather than a petition for habeas corpus, where "the Legislature has established a clear, ministerial duty, but has failed to prescribe any consequence for a violation of that duty." *Id*.[5] The instant case is analogous to *Jones* because plaintiff sought to enforce the statutory requirements imposed upon defendant. See *Id*. Additionally, because plaintiff is not entitled to appeal a parole decision, see MCL 791.234(11), and plaintiff asserts a ministerial error or omission, and "no other remedy exists, legal or equitable,

---

[4] As our Supreme Court has explained:

> [A]n action for habeas corpus may be brought by or on the behalf of any person restrained of his liberty within this state under any pretense whatsoever. Habeas relief is appropriate only where a habeas petitioner can show a radical defect that renders a proceeding or judgment void. Habeas corpus does not function as a writ of error, and it is not available to test questions of evidence. [*Kenney v Booker*, 494 Mich 852, 852; 830 NW2d 382 (2013) (cleaned up).]

This Court has also concluded that "[a]lthough not a completely exhaustive list, in the unlikely scenario where the Parole Board has denied a prisoner parole exclusively on the basis of his race, religion, or national origin, a complaint for habeas corpus would be proper." *Morales*, 260 Mich App at 40-41.

[5] The *Jones* decision related to the failure to hold a timely hearing as required under MCL 791.240a(1). See *Jones*, 468 Mich at 658.

that might achieve the same result," we conclude that mandamus was appropriate in this case. *Morales*, 260 Mich App at 41-42.

## D.  APPLICATION OF BECK

Finally, we disagree with the Court of Claims that *Beck* does not apply to Parole Board decisions.  The court recognized that the same due-process safeguards recognized in *Beck* no longer apply by the time parole is considered, citing *In re Parole of Hill*, 298 Mich App 404, 413; 827 NW2d 407 (2012).  In *In re Parole of Hill*, this Court recognized "that 'there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence,' because the person's 'conviction, with all its procedural safeguards, has extinguished that liberty right.' " *Id*. at 413, citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979).  However, this Court has recognized that, on some occasions, "a liberty interest can arise in the context of parole," explaining:

> For example, a parolee facing parole revocation has a protected liberty interest such that he is entitled to some due process protection.  Similarly, a probationer has a protected liberty interest that requires due process protection during revocation proceedings.  Furthermore, specific language in a state statute can create a liberty interest in parole release that requires some form of due process protection where the statute limits discretion of the parole authority.  The United States Supreme Court has explained that "a State creates a protected liberty interest by placing substantive limitations on official discretion.  An inmate must show that particularized standards or criteria guide the State's decisionmakers." *Olim v. Wakinekona*, 461 US 238, 249, 103 S Ct 1741, 75 L Ed 2d 813 (1983) (quotation marks and citation omitted).  However, Michigan's parole system, in and of itself, does not create a constitutionally protected interest in parole. [*In re Parole of Hill*, 298 Mich App at 413-414 (cleaned up).]

Plaintiff concedes that *Beck* involved a *sentencing* court and whether such a court may consider acquitted conduct when sentencing a defendant.  As previously stated, our Supreme Court in *Beck* held that a sentencing court may not consider acquitted conduct in its sentencing of a defendant.  *Beck*, 504 Mich at 626-627.  The *Beck* Court relied on constitutional principles, such as due process and the presumption of innocence, in support of its holding, see *Beck*, 504 Mich at 620-622.  Although Michigan law makes it explicitly clear that a prisoner has no *right* to parole, constitutional or otherwise, see, *Morales*, 260 Mich App at 39; MCL 791.235(1), it does not follow that plaintiff is barred from challenging the Parole Board's consideration of acquitted conduct in a writ of mandamus, on the basis of *Beck*, on the grounds that defendant failed to comply with its statutory obligations.[6]

---

[6] Although *Beck* did not exist at the time plaintiff filed his first appeal, similar concerns apply to post-*Beck* defendants.  We note that there will be a finite number of cases where a similar issue could arise.  Defendants who are sentenced after the *Beck* decision have the ability to raise a *Beck*

We recognize that defendant is expressly required by statute to consider "*all* of the facts and circumstances" before granting parole to a prisoner, MCL 791.233(1)(a) (emphasis added). We are also cognizant that Easterbrook's death was a result of the automobile accident that was related to plaintiff's underlying conviction. However, we are persuaded that *Beck* should apply to defendant because of the limitation "if not otherwise prohibited by law," imposed by MCL 791.233e(2)(e). Further, while defendant may consider prior arrests that do not result in a conviction, the Parole Board is not allowed to base its determination on this factor alone. MCL 791.235(3)(b); see Rule 791.7715(3). Additionally, although defendant may consider a number of factors and circumstances as part of its parole consideration, see MCL 791.233e; R 791.7716[7], MCL 791.233e(2)(e) is still applicable.

### E. CONCLUSION

We hold that *Beck* applies to plaintiff's Parole Board decisions and future cases before the Parole Board, decisions currently pending before the Parole Board, or cases pending on appeal before this Court. Therefore, we conclude that the Court of Claims erred by granting summary disposition in favor of defendant and denying plaintiff's writ of mandamus.

---

challenge to their sentence in their appeal by right. However, because *Beck* was decided after plaintiff appealed his sentence, such a challenge was unavailable to him. Notably, it would be inconsistent for the Parole Board to consider acquitted conduct in determining parole for a *post-Beck* defendant that the sentencing court was barred from considering in imposing the sentence. See *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998) ("Statutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest.").

[7] R 791.7716 provides, in pertinent part:

> (1) Parole guidelines that do not create disparities in release decisions based on race, color, national origin, gender, religion or disability shall be used to assist the parole board in making release decision[s] that enhance the public safety.

> \* \* \*

> (3) A parole guideline score shall be based on a combination of the length of time the prisoner has been incarcerated *for the offense for which parole is being considered* and each of the following factors:

> (a) The nature of the offense(s) for *which the prisoner is incarcerated* at the time of parole consideration, as reflected by all of the following aggravating and mitigating circumstances:

> \* \* \*

> (ii) Physical or psychological injury to a victim. [Emphasis added.]

Reversed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Michelle M. Rick